GO-BART IMPORTING COMPANY ET AL. v. UNITED STATES.

No. 111.   Argued November 25, 1930.—Decided January 5, 1931.

Mr. *Edward F. Colladay,* with whom *Messrs. Benjamin B. Pettus* and *Joseph C. McGarraghy* were on the brief, for petitioners.

*Solicitor General Thacher,* with whom *Assistant Attorneys General Youngquist* and *Sisson* and *Messrs. John J. Byrne* and *Mahlon D. Kiefer,* were on the brief, for the United States.

Mr. Justice Butler delivered the opinion of the Court.

In a criminal proceeding before a United States commissioner in the Southern District of New York in which Gowen, Bartels and others are defendants, the petitioners applied to the district court for an order enjoining the use as evidence of books and papers alleged to have been seized and taken from petitioners in violation of the Fourth and Fifth Amendments and directing their return. The court made an order that the United States show cause why the relief prayed should not be granted. The United States attorney appeared and opposed the motion, and affidavits of W. J. Calhoun, special agent in charge of special agents of the Bureau of Prohibition, and certain of his subordinates were filed in opposition. The district court denied the applications. The Circuit Court of Appeals affirmed as to the United States attorney and held that as to the special agent in charge the order to show cause should have been discharged. 40 F. (2d) 593.

Petitioners' applications to the district court, which are in form affidavits, set forth the following:

June 5, 1929, Calhoun went before the United States commissioner and, in order to have a warrant issued for the arrest of Gowen, Bartels and others, verified and filed a complaint. He alleged, upon information and belief, that beginning January 1, 1929, and continuing down to the filing of the complaint Gowen, Bartels and other defendants conspired in that district to commit a nuisance against the United States, that is to say, to possess, transport, sell and solicit and receive orders for intoxicating liquor in violation of the National Prohibition Act, and that, in pursuance of the conspiracy and to effect its objects, one Heath purchased an automobile on May 23, 1929. See 27 U. S. C., §§ 33, 35. The complaint did not specify any building, structure, location or place or set forth any particulars or other overt act or show any connection between the purchase of the automobile and any offense referred to in the complaint. On the same day the commissioner issued a warrant in the usual form commanding the marshal of the district and his deputies to apprehend the persons so accused and to bring them before the commissioner or some judge or justice of the United States to be dealt with according to law.

On the next day Calhoun's subordinates, prohibition agents O'Brien, Collins and Sipe, went to the petitioning company's office at No. 200 Fifth Avenue. Bartels, the secretary-treasurer of the company, was there when they entered. O'Brien said he had a warrant to search the premises and exhibited a paper which he falsely claimed was such a warrant. The agents arrested Bartels, searched his person and took papers therefrom. While they were there Gowen, the president of the company, came to the office. O'Brien told him that he had a warrant for his arrest and a warrant to search the premises. The agents arrested and searched Gowen and took papers from him. They took his keys and by threat of force compelled him to open a desk and safe, searched and took papers from

them, searched other parts of the office and took therefrom other papers, journals, account books, letter files, insurance policies, cancelled checks, index cards and other things belonging respectively to Gowen, Bartels and the company. For brevity these will be referred to herein as "papers."

Gowen and Bartels were on the same day arraigned before the commissioner and held on bail further to answer the complaint. A date was set for the examination, hearing has been postponed from time to time and no examination has been had. The papers so seized were taken to the office of Calhoun in the Sub-Treasury Building where they were examined by him and the United States attorney and their subordinates, and such papers have since been kept and held there, as is later herein shown, under the control of the United States attorney in the care and custody of the special agent in charge, for use as evidence against Gowen and Bartels.

Soon after the seizures were made each of the petitioners brought a suit in equity in the federal court for that district against the special agent in charge and the United States attorney, to enjoin them from using such papers as evidence and to have them returned. The court dismissed these suits on the ground that the proper remedy was by motion in the criminal proceedings.

Then Gowen and Bartels, each in his own behalf, and the company, acting through Bartels, made these applications. The court made its order that the United States show cause why an injunction should not issue restraining it and its officers from using as evidence the papers so seized and why an order should not issue directing their return.

In opposition, the affidavit of one Braidwood was submitted. It tends to show that in 1927 and 1928 petitioners and others acting together engaged in the unlawful sale of intoxicating liquor, that at the company's office

they exhibited and took orders for intoxicating liquor some of which was delivered there and some elsewhere, and that in April, 1929, he reported these facts to Calhoun. Calhoun's affidavit states that Braidwood had so reported and that by independent investigations he had corroborated such statements and thus knew that a conspiracy unlawfully to sell intoxicating liquors in 1928 and 1929 had been entered into and overt acts in furtherance thereof had been performed within the district and that he believed the petitioners had been parties to such conspiracy, that prior to the day of the arrests he communicated such statements and belief to O'Brien and assigned him to further investigate the case.

O'Brien's affidavit states: From the information given him by Calhoun he believed petitioners and others had so conspired. Calhoun described to him the company's office in detail and the personal appearance of Gowen and Bartels. On June 6, 1929, he took a certified copy of the complaint and warrant " for the purpose of reference as to the names of the various defendants " and went to petitioners' office. It consisted of a suite of three rooms fitted up with office furniture including desks, filing cabinets and a safe. He told Bartels and Gowen that he was an officer of the United States and placed them under arrest for such conspiracy. No warrant was " served " upon either of them. The office was searched and there were found and taken therefrom approximately a dozen bottles of assorted intoxicating liquor, a large number of memoranda, books of account, records, filing cases, and other papers all of which pertained to unlawful dealings by Gowen and Bartels in intoxicating liquors.

O'Brien's affidavit also states that the papers so seized are of such quantity and bulk that it is impracticable to attach copies to the affidavit, that such papers are " specifically incorporated herein by reference and made a part hereof and are further made available for inspection at

any time, if desired by the Court, in connection with the consideration of this order to show cause."

In reply to O'Brien's affidavit petitioners submitted affidavits of Gowen, Bartels and other defendants who were arrested at the company's office on that occasion and affidavits of other persons who were present during some part of the time that the prohibition agents were there. These affidavits show that O'Brien said he had a warrant of arrest and produced a paper which several of these affiants say they read and believe to be the warrant issued by the commissioner, a copy of which was filed with the moving papers. As to these details there is no conflict in the evidence.

The district court refused to sustain the contention that no use was made of the warrant and accepted the statements that O'Brien claimed to have warrants for the arrests and searches. The Circuit Court of Appeals did not definitely express opinion as to that matter. We have examined the evidence. It requires a finding that O'Brien did so claim, that he had the warrant issued by the commissioner or a copy of it and that when he arrested Gowen and Bartels he claimed and purported to act under the warrant. No warrant for the search of the premises was issued.

The orders dismissing petitioners' suits in equity are not before us. The question whether the district court had jurisdiction summarily to deal with petitioners' applications, while not brought forward by the parties, arises upon the record, was considered by the Circuit Court of Appeals and suggested during the argument here.

United States commissioners are inferior officers.[1] *United States* v. *Allred*, 155 U. S. 591, 594. *Rice* v. *Ames*,

---

[1] As to the office of United States commissioner see: § 4, Act of March 2, 1793, 1 Stat. 334; § 1, Act of February 20, 1812, 2 Stat. 679; Act of March 1, 1817, 3 Stat. 350; §§ 1, 2, Act of August 23, 1842, 5 Stat. 516; R. S., § 627; §§ 19, 20 and 21, Act of May 28, 1896, 29 Stat. 184. *United States* v. *Maresca*, 266 Fed. 713, 719.

180 U. S. 371, 377, 378. Cf. *Ex parte Hennen*, 13 Pet. 230, 257, *et seq*. The Act of May 28, 1896, 29 Stat. 184, abolished commissioners of the circuit courts, authorized each district court to appoint United States commissioners, gave to them the same powers and duties that commissioners of the circuit courts had, required such appointments to be entered of record in the district courts, provided that the commissioners should hold their office subject to removal by the court appointing them (28 U. S. C., § 526) and required them to keep records of proceedings before them in criminal cases and deliver the same to the clerks of the courts on the commissioners' ceasing to hold office. *Id.*, § 529. They are authorized by statute in respect of numerous matters [2] and the relations between them and the district courts vary as do their official acts. Cf. *United States* v. *Allred, ubi supra. Grin* v. *Shine*, 187 U. S. 181, 187. *Todd* v. *United States*, 158 U. S. 278, 282. *Collins* v. *Miller*, 252 U. S. 364, 369. *United States* v. *Berry*, 4 Fed. 779. *Ex parte Perkins*, 29 Fed. 900. *The Mary*, 233 Fed. 121.

We need not consider what power the district court may exert over the commissioners dealing with matters unlike

---

[2] The powers and duties of United States commissioners include: To arrest and imprison, or bail, for trial (18 U. S. C., § 591; see also §§ 593–597) and in certain cases to take recognizances from witnesses on preliminary hearings (28 U. S. C., § 657); to issue warrants for and examine persons charged with being fugitives from justice (18 U. S. C., § 651); to hold to security of the peace and for good behavior (28 U. S. C., § 392); to issue search warrants (18 U. S. C., §§ 611–627; 26 U. S. C., § 1195); to take bail and affidavits in civil causes (28 U. S. C., § 758); to discharge poor convicts imprisoned for non-payment of fines (18 U. S. C., § 641); to institute prosecutions under laws relating to the elective franchise and civil rights and to appoint persons to execute warrants thereunder (8 U. S. C., §§ 49, 50); to enforce arbitration awards of foreign consuls in disputes between captains and crews of foreign vessels (28 U. S. C., § 393); to summon master of ship to show cause why process should not issue against it for seaman's wages (46 U. S. C., § 603); to take oaths and acknowledgments. 5 U. S. C., § 92. 28 U. S. C., § 525.

that now before us. Here the commissioner acted under R. S., § 1014, which provides that for any crime or offense against the United States, the offender may by any justice or judge of the United States or by any commissioner of the circuit court to take bail (now United States commissioner) be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. 18 U. S. C., § 591. All the commissioner's acts and the things done by the prohibition officers in respect of this matter were preparatory and preliminary to a consideration of the charge by a grand jury and, if an indictment should be found, the final disposition of the case in the district court. The commissioner acted not as a court, or as a judge of any court, but as a mere officer of the district court in proceedings of which that court had authority to take control at any time. *Todd* v. *United States, ubi supra.* *Collins* v. *Miller, ubi supra.* *United States* v. *Berry, supra.* *United States* v. *Casino,* 286 Fed. 976, 979.

Notwithstanding the order to show cause was addressed to the United States alone, this is in substance and effect a proceeding against the United States attorney and the special agent in charge. The special agent in charge was the prosecuting witness. It was his duty under the statute to report violations to the United States attorney. *Donnelley* v. *United States,* 276 U. S. 505. And he was authorized, subject to the control of the United States attorney, to " conduct the prosecution at the committing trial for the purpose of having the offenders held for the action of a grand jury," 27 U. S. C., § 11. It is immaterial whether he intended or was personally to conduct the prosecution before the commissioner. As the United States attorney had control of the prosecution before the commissioner, whether conducted by his assistants or prohibition agents, the papers were held subject to his control and direction although in the immediate care and custody

of the prohibition officers. He and they voluntarily came before the court to defend the seizure, the retention and proposed use of the papers and so in effect became parties to the proceeding. By making the papers a part of O'Brien's affidavit they brought the papers within the power of the court and constructively into its possession, if indeed the papers had not already come within its reach. In so far as it purports to run against the United States, the form of the order may be treated as a mere irregularity.

The United States attorney and the special agent in charge, as officers authorized to conduct such prosecution and having control and custody of the papers for that purpose, are, in respect of the acts relating to such prosecution, alike subject to the proper exertion of the disciplinary powers of the court. And on the facts here shown it is plain that the district court had jurisdiction summarily to determine whether the evidence should be suppressed and the papers returned to the petitioners. *Weeks* v. *United States*, 232 U. S. 383, 398. *Wise* v. *Henkel*, 220 U. S. 556, 558. *Silverthorne Lumber Co.* v. *United States*, 251 U. S. 385, 390. *Cogen* v. *United States* 278 U. S. 221, 225. *United States* v. *Mills*, 185 Fed. 318. *United States* v. *McHie*, 194 Fed. 894, 898. *United States* v. *Lydecker*, 275 Fed. 976, 980. *United States* v. *Kraus*, 270 Fed. 578, 580. Cf. *Applybe* v. *United States*, 32 F. (2d) 873, 874.

The Government concedes that the warrant did not authorize O'Brien or other prohibition agents to make the arrests. The complaint, which in substance is recited in the warrant, was verified merely on information and belief and does not state facts sufficient to constitute an offense. *Ex parte Burford*, 3 Cranch 448, 453. *Rice* v. *Ames, supra*, 374. *Byars* v. *United States*, 273 U. S. 28. *United States* v. *Cruikshank*, 92 U. S. 542, 558. *United States* v. *Hess*, 124 U. S. 483. *United States* v. *Ruroede*, 220 Fed. 210,

212, 213. The warrant was improvidently issued and invalid on its face. It does not purport to authorize anyone other than the marshal and his deputies.

The company is not mentioned in the complaint or warrant and is a stranger to the proceeding before the commissioner. Unquestionably the order of the district court as to it was final and appealable. *Cogen* v. *United States, ubi supra. Ex parte Tiffany,* 252 U. S. 32. *Savannah* v. *Jesup,* 106 U. S. 563. *Gumbel* v. *Pitkin,* 113 U. S. 545. When the application was made, no information or indictment had been found or returned against Gowen or Bartels. There was nothing to show that any criminal proceeding would ever be instituted in that court against them. *Post* v. *United States,* 161 U. S. 583, 587. And, as above shown, the complaint does not state an offense. It follows that the order of the district court was not made in or dependent upon any case or proceeding there pending and therefore the order as to them was appealable. *Cogen* v. *United States, ubi supra. Perlman* v. *United States,* 247 U. S. 7, 13. *Burdeau* v. *McDowell,* 256 U. S. 465.

Without pausing to consider the matter, we assume, as held by the lower courts, that the facts of which Calhoun and O'Brien had been informed prior to the arrests are sufficient to justify the apprehension without a warrant of Gowen and Bartels for the conspiracy referred to in Braidwood's affidavit and on that basis we treat the arrests as lawful and valid.

No question is here raised as to the search of the persons. There remains for consideration the question whether the search of the premises, the seizure of the papers therefrom and their retention for use as evidence may be sustained. The first clause of the Fourth Amendment declares: "The right of the people to be se-

cure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." It is general and forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent, and unquestionably extends to the premises where the search was made and the papers taken. *Gouled* v. *United States*, 255 U. S. 298, 307. The second clause declares: " and no Warrants shall issue, but upon probable cause, supported by' Oath, or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This prevents the issue of warrants on loose, vague or doubtful bases of fact. It emphasizes the purpose to protect against all general searches. Since before the creation of our government, such searches have been deemed obnoxious to fundamental principles of liberty. They are denounced in the constitutions or statutes of every State in the Union. *Agnello* v. *United States*, 269 U. S. 20, 33. The need of protection against them is attested alike by history and present conditions. The Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted. *Boyd* v. *United States*, 116 U. S. 616, 623. *Weeks* v. *United States*, *supra*, 389–92.

There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances. It is not, and could not be, claimed that the officers saw conspiracy being committed. And there is no suggestion that Gowen or Bartels was committing crime when arrested. In April, 1929, Braidwood reported to Calhoun the existence of a conspiracy and that in pursuance of it sales and deliveries of intoxicating liquor had been made in 1927 and 1928. The record does not show

any criminal overt act in 1929. Calhoun's description to O'Brien of the company's office in detail and of Gowen and Bartels shows that he knew the place and offenders. Notwithstanding he had an abundance of information and time to swear out a valid warrant, he failed to do so. O'Brien falsely claimed to have a warrant 'or the search of the premises and he made the arrests under color of the invalid warrant. By pretension of right and threat of force he compelled Gowen to open the desk and the safe and with the others made a general and apparently unlimited search, ransacking the desk, safe, filing cases and other parts of the office. It was a lawless invasion of the premises and a general exploratory search in the hope that evidence of crime might be found. *Federal Trade Commission* v. *American Tobacco Co.,* 264 U. S. 298, 306.

Plainly the case before us is essentially different from *Marron* v. *United States,* 275 U. S. 192. There, officers executing a valid search warrant for intoxicating liquors found and arrested one Birdsall who in pursuance of a conspiracy was actually engaged in running a saloon. As an incident to the arrest they seized a ledger in a closet where the liquor or some of it was kept and some bills beside the cash register. These things were visible and accessible and in the offender's immediate custody. There was no threat of force or general search or rummaging of the place.

The uncontradicted evidence requires a finding that here the search of the premises was unreasonable. *Silverthorne Lumber Co.* v. *United States, supra. Marron* v. *United States, supra,* 199. *United States* v. *Kirschenblatt,* 16 F. (2d) 202. The judgments below must be reversed and the case remanded to the district court with directions to enjoin the United States attorney and the special agent in charge from using the papers as evidence nd to order the same returned to petitioners.

*Reversed.*