### UNITED STATES v. WAINER.
#### No. 6863.

District Court, W. D. Pennsylvania.

March 13, 1931.

Louis E. Graham, U. S. Atty., and James H. Dilley, Asst. U. S. Atty., both of Pittsburgh, Pa.

Frank W. McKean, of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

The Fraternal Order of Eagles, No. 533, New Kensington, is a lodge and a fraternal organization, having its lodge, social, and club rooms located at No. 981 Fifth avenue, New Kensington. It has been a member of the Grand Lodge since November 12, 1903. It is the owner of the property at the above number.

The defendant is a member of said lodge, the steward thereof, the custodian of the lodge's property, and has an interest in said premises.

On November 13, 1930, prohibition agents gained entrance to the property aforesaid by cards or receipts purporting to show that they were members of the Homestead Lodge of the Fraternal Order of Eagles. The agents were not members of any lodge of the Fraternal Order of Eagles. The representations made by the cards were false and were known by the agents to be false, and were made for the purpose of gaining entrance to the property of said lodge in order that they might make purchases of intoxicating liquor and use the information thus obtained as a basis for the issuing of a search warrant.

On admission to the lodge's property the prohibition agents made purchase of intoxicating liquor. On November 18, 1930, application was made for a search warrant before a United States Commissioner. The affidavit of probable cause was predicated on the information procured by the agents November 13, 1930. A search warrant was issued; the property of the lodge was searched and a return made of having seized a quantity of whisky, home-brew beer, mash, etc.

On January 28, 1931, the grand jury found a true bill against the defendant, indicting him for the manufacture, sale, and possession of intoxicating liquor.

On February 13, 1931, defendant presented his petition to this court praying that the evidence procured by the prohibition agents at the time of their entrance to the lodge's property, and by the seizure made under the search warrant November 19, 1930, be suppressed on the ground that said evidence had been procured by fraud, and by the commission of a crime under the laws of the commonwealth of Pennsylvania. The government filed an answer admitting the facts alleged in the petition.

The Pennsylvania Act of March 28, 1907, P. L. 35, is entitled: "An Act to prohibit the fraudulent use of the name or title of secret fraternities, associations, societies, orders, or organizations; also prohibiting the fraudulent wearing or use of any emblem, badge, button, or insignia of such secret fraternal organization; and fixing the penalty for violation of this act."

It is enacted therein: "That it shall be unlawful, and it is hereby expressly prohibited, for any person, * * * directly or indirectly, to aid in the use of, the name or title of any secret fraternal association,

society, order or organization which has had a grand lodge having jurisdiction in this commonwealth for ten years or longer; or to imitate such name or title, or any name or title so nearly resembling it as to be calculated to deceive; or to wear or use, or aid in the wearing or use of, any emblem, badge, button, device or insignia, fraudulently or with the intent to deceive." (18 PS § 2719.)

The act further provides that: "Any person or persons violating this act shall be guilty of misdemeanor." (18 PS § 2720.)

The Fourth Amendment reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Should the evidence procured by the prohibition agents be suppressed on the ground that it was procured by fraud and by acts which violated the statute aforesaid?

It may be helpful in the consideration of this question to consider some established facts, rules of law having a relationship to the question involved, together with inferences which can be properly taken therefrom.

1. No question is raised that the affidavit of probable cause to support the search warrant does not show probable cause, or that the search warrant in itself is not in legal form, or that it was not legally executed. Whether the evidence should be suppressed is to be determined wholly on the facts relating to the manner and method in which the prohibition agents procured the facts which were used in the affidavit of probable cause.

2. No case has been called to our attention, nor have we seen any, which has determined that evidence should be suppressed which was procured by officers of the United States through trick or artifice, or by the commission of a crime under State law.

3. Under the common law competent evidence of the commission of a crime is admissible, regardless of how it is procured. Olmstead v. United States, 277 U. S. 438, 466, 467 and 468, 48 S. Ct. 564, 72 L. Ed. 944, 66 A. L. R. 376.

4. The common-law rule has been modified in the United States courts to the extent only of excluding evidence of the commission of a crime, which is procured by United States officers or representatives in violation of the Constitution of the United States. Olmstead v. United States, 277 U. S. 438, 467, 48 S. Ct. 564, 72 L. Ed. 944, 66 A. L. R. 376.

5. Evidence has always been received in criminal cases, of officers or representatives of the public, who have joined gangs of robbers, or murderers, took oaths of secrecy, entered the houses of the members thereof, entered into criminal conspiracies with its members, which was done for the purpose of investigating crime and the arrest and conviction of the criminals. In Olmstead v. United States, 277 U. S. 438, 468, 48 S. Ct. 564, 569, 72 L. Ed. 944, 66 A. L. R. 376, it is stated: "The history of criminal trials shows numerous cases of prosecutions of oathbound conspiracies for murder, robbery, and other crimes, where officers of the law have disguised themselves and joined the organizations, taken the oaths, and given themselves every appearance of active members engaged in the promotion of crime for the purpose of securing evidence. Evidence secured by such means has always been received."

Such conspiracies, tricks, and artifices have never been considered a violation of the Fourth and Fifth Amendments—such evidence is admissible by necessity. Society has always needed such protection and probably has never needed it more than at the present time.

6. Constitutional provisions should be construed so as to avoid absurd, unjust, or unreasonable consequence. In re Chapman, 166 U. S. 661, 667, 17 S. Ct. 677, 680, 41 L. Ed. 1154, it is stated: "But nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion."

If trick or artifice cannot be resorted to by officers under the National Prohibition Act (27 USCA), absurd, unjust, and unreasonable consequences will follow. It is common knowledge that to-day there are many saloons, so-called one-man clubs, and other places where intoxicating liquors are sold. Prohibition agents cannot ordinarily gain admission to such places without representing that they are not prohibition agents and without satisfying the person in charge that they are otherwise satisfactory. The agents usually make such representations. After

they gain entrance they make purchases, and upon these purchases affidavits of probable cause are made and search warrants are issued. Their entrance is gained in such cases by misrepresentations, trick and artifice, but if such methods cannot be used the result will be that the owners thereof in a large measure will be running the same with immunity while the government, through its public officers, stand impotently by.

■ 7. The Fourth and Fifth Amendments should be construed in a practical way so as to conserve the interest of the public as well as that of the citizen. In Olmstead v. United States, 277 U. S. 438, 465, 48 S. Ct. 564, 568, 72 L. Ed. 944, 66 A. L. R. 376, it is stated:

"This court, in Carroll v. United States, 267 U. S. 132, 149, 45 S. Ct. 280, 284, 69 L. Ed. 543, 39 A. L. R. 790, declared:

" 'The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests, as well as the interest and rights of individual citizens.' "

A practical construction of the Constitution and a construction which will conserve the interest of the public and the individual requires such an interpretation that law breakers cannot violate the law with immunity, and this requires that officers in the enforcement of the National Prohibition Act (27 USCA) should have the same right to resort to trick or artifice as is permissible where other laws are violated.

■ 8. Evidence procured by prohibition agents which involve the commission of a crime under state law is admissible against the parties charged with the crime in the United States courts. Olmstead v. United States, 277 U. S. 438, 468, 469, 48 S. Ct. 564, 72 L. Ed. 944, 66 A. L. R. 376.

This character of evidence being admissible at the trial of defendants in court would also be competent in an affidavit of probable cause. If facts which constitute a crime against the state are competent and admissible in court and in an affidavit of probable cause, it would follow under like conditions that evidence procured by trick or artifice would also be admissible.

9. Evidence procured by officers or representatives of the United States (without a search warrant and without incident to a legal arrest) by means of force, actual or threatened, or by stealth, is in violation of the Fourth Amendment and will be suppressed upon proper action being taken

therefor. Illustrative of this rule are the following cases:

In Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, it was held that a search was unreasonable and in violation of the Fourth Amendment where entrance was gained to Weeks' home by the officers without a search warrant. Weeks was arrested at another place.

In Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654, a search was held to be unreasonable and in violation of the Fourth Amendment, where revenue agents, in the absence of Amos, without a search warrant entered his home and store after gaining admission by telling Amos's wife that they were revenue agents and had come to search the premises.

In Silverthorne Lumber Company v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426, a search and seizure was held to be unreasonable and in violation of the Fourth Amendment. The search was made without a search warrant after the arrest of two of the individual Silverthornes, and was made under color of an invalid subpœna.

In Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409, a search was held unreasonable and in violation of the Fourth Amendment, the search being made at defendant's home without a search warrant some time after his arrest on the street.

In Go-Bart Importing Co. et al. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. ——, opinion by Mr. Justice Butler, January 5, 1931, search and seizure was held to be unreasonable and in violation of the Fourth Amendment. The search was made without a search warrant of the office of the company, of which two officers were under arrest, by requiring the president to take keys and open a safe and cabinet therein.

These cases are distinguishable from the present case, in that the officers acted under color of authority, and there was force, either actual or threatened. In the present case the agents did not act under color of United States authority and no force was employed.

In the case of Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647, a search and seizure was held to be unreasonable and in violation of the Fourth Amendment. In Olmstead v. United States, 277 U. S. 438, 463, 464, 48 S. Ct. 564, 567, 72 L. Ed. 944, 66 A. L. R. 376, the Supreme Court,

in commenting on the Gouled Case, said: "Gouled v. United States, carried the inhibition against unreasonable searches and seizures to the extreme limit. Its authority is not to be enlarged by implication, and must be confined to the precise state of facts disclosed by the record. A representative of the Intelligence Department of the Army, having by stealth obtained admission to the defendant's office, seized and carried away certain private papers valuable for evidential purposes. This was held an unreasonable search and seizure within the Fourth Amendment. A stealthy entrance in such circumstances became the equivalent to an entry by force. There was actual entrance into the private quarters of defendant and the taking away of something tangible."

I therefore conclude that the petition to suppress should be dismissed for the reasons: That there are no reported cases holding search and seizure invalid where procured by officers or representatives of the United States through trick or artifice; that evidence of trick, artifice, and crime by officers have always been held admissible in the trial of criminals; that evidence involving crime by officers under a state law is admissible in United States Courts; that a construction of the Fourth Amendment, which will conserve the public interest as well as that of the citizen and which will prevent absurd and unreasonable consequences, requires the admission of such evidence; and for the other reasons stated above.

By reason of our decision on the application of the Fourth Amendment, it is not necessary to determine whether defendant is in a position to invoke the protection of the Fourth Amendment. He, at the time of the entrance and search, was a member of the Fraternal Order of Eagles, No. 533; he was its steward; he was the custodian of its property and had an interest in the property which it owned. There is no direct evidence whether this lodge was incorporated or not. There is an allegation, in the petition to suppress, that the lodge was the owner of the property. In the search warrant it is stated that the record owner, according to the 1930 tax assessments, is the Fraternal Order of Eagles, No. 533. The statement in the petition and in the tax assessment records would indicate that the lodge was incorporated for the reason that corporations can hold title to real estate while unincorporated associations cannot.

In Wilson v. United States, 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558, it is stated in the syllabus:

"A subpœna duces tecum, which is suitably specific and properly limited in its scope, and calls for the production of documents which, as against their lawful owner to whom the writ is directed, the party procuring its issuance is entitled to have produced, does not violate the unreasonable search and seizure provisions of the Fourth Amendment, and the constitutional privilege against testifying against himself cannot be raised for his personal benefit by an officer of the corporation having the documents in his possession.

"A lawful command to a corporation is in effect a command to its officers, who may be punished for contempt for disobedience of its terms.

"An officer of a corporation is protected by the self-incrimination provisions of the Fifth Amendment against the compulsory production of his private books and papers, but this privilege does not extend to books of the corporation in his possession.

"An officer of a corporation cannot refuse to produce documents of a corporation on the ground that they would incriminate him simply because he himself wrote or signed them, and this even if indictments are pending against him.

"Physical custody of incriminating documents does not protect the custodian against their compulsory production. The privilege which exists as to private papers cannot be maintained."

In Schenck v. United States, 249 U. S. 47, 39 S. Ct. 247, 63 L. Ed. 470, it is stated in the syllabus: "Incriminating documents seized under a search warrant directed against a Socialist headquarters, held admissible in evidence, consistently with the Fourth and Fifth Amendments, in a criminal prosecution against the general secretary of a Socialist party, who had charge of the office."

In Guckenheimer v. United States, 3 F. (2d) 786, 789 (C. C. A. 3), it is stated by Judge Woolley in the opinion of the court: "If these papers were unlawfully seized and thereby the constitutional rights of any one were invaded, they were the rights of the corporation and not the rights of the other defendants. Next, it is clear that a question of the lawfulness of a seizure can be raised only by one whose rights have been invaded. Certainly such a seizure, if unlawful, could not affect the constitutional rights of defendants whose property had not been seized or the privacy of whose homes had not been disturbed; nor could they claim for them-

selves the benefits of the Fourth Amendment when its violation, if any, was with reference to the rights of another. Remus v. United States (C. C. A.) 291 F. 501, 510, 511. It follows therefore that the question of the admissibility of the evidence based on an alleged unlawful search and seizure does not extend to the personal defendants but embraces only the corporation whose property was taken."

In United States v. Mandel (D. C.) 17 F.(2d) 270, it was held that a person in possession of a still and operating it for the owner or lessee cannot invoke the benefit of the Fourth Amendment. See also Essgee Co. v. United States, 262 U. S. 151, 43 S. Ct. 514, 67 L. Ed. 917.

If the Fraternal Order of Eagles, No. 533, is a corporation, defendant cannot invoke the protection of the Fourth Amendment. If the Lodge was incorporated, it is doubtful whether defendant can invoke its protection. The burden of proof was upon the petitioner.

The petition is dismissed.