**UNITED STATES of America**

v.

**Louis H. KUPPER.**

**Crim. No. 19935.**

United States District Court
E. D. Pennsylvania.

Dec. 30, 1959.

---

3. See Title 29, Code of Federal Regulations.

Walter E. Alessandroni, U. S. Atty., Daniel J. DiGiacomo, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Jacob Kossman, Philadelphia Pa., for defendant.

LORD, District Judge.

The defendant is charged in an indictment on 42 counts. The first 24 charge him with wilfully and knowingly preparing false income tax returns in violation of 26 U.S.C.A. § 7206(2), Internal Revenue Code of 1954. The remaining 18 counts are for knowingly and unlawfully receiving compensation for services rendered by him in preparing income tax returns when he was an employee of the United States Treasury Department, Internal Revenue Service, in violation of 18 U.S.C.A. § 281.

Defendant has moved to suppress evidence obtained by agents of the government by a search without warrant of defendant's room at the Hotel Rittenhouse in Philadelphia on October 23,

1958. This Court heard testimony on the motion for two days, has before it the briefs of both parties, and is therefore in a position to rule on the motion.

The government defends the search. It further argues, however, that the indictment does not depend upon the search in any way. The information upon which the 42 counts are based, it says, was secured independently of the information gained at defendant's Rittenhouse Hotel room. The government's position, as last stated, is supported by the testimony of witnesses at the hearing on the motion.

The 42 counts relate to returns prepared by defendant for 14 individual or joint taxpayers (counting joint taxpayers as one unit for the purpose of this listing). They are: (1) James Adams; (2) Virginia Brounson; (3) Charles Dabb; (4) Damond and Minnie Gamble; (5) Theodore and Ida Handley; (6) Mary King (later Mary Wilson); (7) James H. Phillips; (8) Willis Pinkett; (9) Otis B. Reese; (10) Howard and Edith Reynolds; (11) Edgar and Dorothy Schuler; (12) John and Elizabeth Varhola; (13) Mary (King) Wilson, Herman Wilson, and Herman and Mary Wilson; and (14) Harry C. Woodards.

In the fall of 1958, defendant — then employed by the Internal Revenue Service — was under scrutiny by the Inspection Service of the Internal Revenue Service. Mr. Spencer Wood of the Inspection Service secured the Rittenhouse Hotel address of defendant from the personnel file (N.T. p. 12). Shortly thereafter, Mr. Wood interviewed the manager of the Rittenhouse Hotel, Mr. Charles W. Dabb. At that time, Mr. Dabb disclosed the names of several persons (including himself) for whom defendant had prepared tax returns (N. T. pp. 21, 22).

At the same time, Mr. Dabb offered to take Mr. Wood into Mr. Kupper's room (although the defendant takes a skeptical view of the spontaneity of that "offer"). At any rate, Mr. Dabb stated that he would first need the permission of the owner of the hotel, which he secured on the next day. There was also delay in securing the key, since Mr. Kupper's room had been equipped with a private lock.

On the morning of October 23, 1958, the agents entered the room of Mr. Kupper in the company of the hotel manager. They searched the room for ten minutes but took nothing. The agent in charge made some notes, however (N.T. pp. 8–10). Those notes were names, phone numbers and certain cryptic entries taken from three business cards. It is not contended that any of those notations refer to taxpayers whose names are mentioned in the indictment.

The circumstances are in part explained by the following quotation from a statement made by Manager Dabb shortly before the hearing on the motion:

"* * * I recall that Mr. R. Spencer Wood * * * contacted me on or about October 21 and asked me about Louis Kupper. I explained that Mr. Kupper was married sometime around March 1958, at which time he started living with his wife and stepson some place in the suburbs, but that Mr. Kupper had continued to keep Room 1105 at the Rittenhouse Hotel, but that in the last three or four months Mr. Kupper has only come infrequently to the hotel to pick up his mail. Mr. Kupper had not been in the hotel for about ten days before Mr. Wood first talked to me. I recall telling Mr. Wood that I knew Mr. Kupper was an income tax man and made out lots of returns. I also told Mr. Wood that Mr. Kupper had prepared my 1957 income tax return, Mr. Salvatore Juliano's and Mr. Earle Minter's income tax returns and I may have told Mr. Wood that Mr. Kupper prepared Mr. Jack Dubin's income tax return for 1957." N.T. pp. 166–173.

The witnesses testified that the names of the persons listed in the indictment

counts were secured from "leads" which the Inspection Service had before October 23, 1958, from the names of clients such as those furnished by Mr. Dabb (in the passage quoted above) and others, together with those uncovered in the Internal Revenue Service files by comparison of samples of the defendant's handwriting and typewriting characteristics (N.T. pp. 121–139).

The procedure was to locate a block, or group of 100 returns, in the Internal Revenue files, which contained the name of a taxpayer reported as having had his return prepared by defendant. Experience had shown that those who prepare large numbers of tax returns file them in batches, with the result that such returns often fall into the same block, since the blocks of 100 returns are simply returns filed in order of filing date and time. In reliance on that practice, such blocks were "pulled" (removed from the files) and individually searched for returns prepared by defendant Kupper. Such returns were recognized by handwriting and typewriting characteristics. It was in that fashion that most of the names of taxpayers whose names appear in the indictment were secured.

The government employees who testified at the hearing on this motion stated that the names of taxpayers in the 42 counts were not secured as a result of the search of Kupper's room. For instance, Francis M. Fitzpatrick of the Inspection Service testified that he assumed supervision of this case on October 24, 1958 (N.T. p. 81). His testimony upon direct examination was in part based upon memoranda in his possession, Government's Exhibits 1 and 2, which are papers entitled "Names Secured through Block Searching of Names given by Mr. Charles Dabb on October 21, 1958." Those lists commence with the names of Charles Dabb and with Salvatore Juliano, respectively (N.T. p. 86).

It is to be noted that both those names were disclosed orally to the Inspection Service agent two days before entry of the Kupper room.

Later in his testimony, the same supervisor was asked on redirect examination to describe the means by which each of the names of taxpayers which appear in the indictments were secured (N.T. p. 121). His answers to the separate questions as to each name account for the entire group of taxpayers (whose names appear earlier herein) as having been located without reliance upon the list copied in the Kupper room (N.T. pp. 121–139). None of the names which were copied in defendant's room appear on the indictment, as stated earlier, and the answer to the final question posed to Mr. Fitzpatrick is a flat negative, i. e.

"Q. Now, were any of those names which appear in the indictment obtained from information which resulted from a search of the room? A. No, sir."

Defendant further suggests that the use of a "mail cover" tainted the Government's evidence. That is, a clerk was assigned in the Post Office to scrutinize all mail addressed to defendant at the Rittenhouse Hotel and to note the names and addresses of the senders. The motion to suppress cannot be granted for that reason, however, since it was not shown that the fruits of the mail watch were used (directly or indirectly) in the preparation of the government's charges. Furthermore, it has been held in this district that even where results of a "mail watch" are communicated to the Justice Department in violation of Postal Regulations, the evidence will not necessarily be suppressed. United States v. Schwartz, D.C.E.D.Pa. 1959, 176 F.Supp. 613.

In conclusion, it is necessary to point out that if it had appeared that evidence secured by the search of Kupper's room constituted any part of the case which the Government has prepared it would have been necessary to grant the defendant's motion as to such evidence. General exploratory searches

268

without warrant are forbidden. Go-Bart Importing Co. v. United States, 1930, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374. Even with search warrant, purely evidentiary matter cannot be searched for and seized. Gouled v. United States, 1920, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. Furthermore, it has been necessary to make sure that the evidence used to support the indictment in this case was not the *indirect* product of the search of Kupper's room because, as was said by Mr. Justice Holmes in Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 183, 64 L.Ed. 319:

"* * * The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all * * * knowledge gained by the Government's own wrong cannot be used by it in the way proposed * * *"

■ A careful review of the record, however, has demonstrated that the Government did not *in any way* use information obtained as a result of the search.

■ The government has cited a number of cases in which searches have been upheld. It is recognized that whether or not a search is unreasonable is a factual matter and must always be determined by the circumstances. Woodward v. United States, 1958, 102 U.S.App.D.C. 393, 254 F.2d 312. Cases cited by the government are distinguishable, however. Several are of the type where the owner of premises finds a dangerous weapon in the home in which others are staying as his or her guests. Having become alarmed, the householder has called law enforcement officers who have entered without warrant, and who have found and seized weapons. This Court agrees that such search and seizure does not violate the 4th Amendment to the Constitution of the United States. Fredricksen v. United States, 1959, 105 U.S.App.D.C. 262,

266 F.2d 463; Woodward v. United States, 1958, 102 U.S.App.D.C. 393, 254 F.2d 312. See also Gillars v. United States, 1950, 87 U.S.App.D.C. 16, 182 F.2d 962; Stein v. United States, 9 Cir., 1948, 166 F.2d 851; Reszutek v. United States, 2 Cir., 1945, 147 F.2d 142. None of these cases, however, involve facts approaching those of the instant case. Those cases do not alter this Court's opinion that the search of the Rittenhouse Hotel room was illegal.

Nevertheless, since this Court finds that the Government has not used evidence illegally obtained (either directly or indirectly) in the preparation of the instant case for presentment to the Grand Jury, or — for all that appears — in the evidence which it intends to use for trial, the defendant's motion to suppress evidence will be denied and it is so ordered.