**UNITED STATES of America,**

v.

**Claude Henry KLEEFIELD.**

**No. 67 Cr. 784.**

United States District Court
S. D. New York.

Nov. 13, 1967.

---

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, by John Robinson, Asst. U. S. Atty., for the United States.

Daniel H. Greenberg, New York City, for defendant.

## OPINION

TYLER, District Judge.

Defendant's motion to suppress evidence seized from his law office on September 14, 1967 is disposed of as hereinafter indicated.*

Defendant, a member of the bar in the City of New York, was indicted on September 14, 1967. The indictment, containing 35 counts in which the defendant is named, charges him with making false and fraudulent statements to the Immigration and Naturalization Service ("INS") and the Department of Labor in connection with certain clients represented by him in the course of his law practice in alleged violation of Title 18, United States Code, §§ 1001, 1505 and 2.

The facts relevant to the suppression issue are summarized as follows: After a grand jury investigation had proceeded for a number of weeks, the indictment was returned on September 14 and immediately ordered sealed at the request of the government. At the same time, a judge of this court granted the government's request for the issuance of a bench warrant for the arrest of defendant. On the afternoon of the 14th, two marshals accompanied by two INS agents proceeded to Kleefield's office at No. 100 West 72nd Street in Manhattan to make the arrest. The INS agents were instructed by an Assistant United States Attorney to make a search "incident to arrest", particularly to seize files relating to the indictments, checkbooks, receipt books, diaries, and office typewriters upon which allegedly false INS forms were prepared. The INS agents, apparently aware of the considerable size of Kleefield's immigration practice, anticipated that the relevant files might be difficult to locate. Accordingly, they arranged to have reinforcements nearby, in case they were needed. The reserve forces numbered 11 additional INS agents, who arrived separately on the scene in 3 vans and waited outside while the arrest was made. It soon became apparent to the agent who had accompanied the marshals that assistance was needed; the additional agents were then called in. Searching defendant's comparatively voluminous files proved too much of a task, however, for even these augmented forces to accomplish in a reasonable time. It was decided, therefore, to seize all of the immigration files, cart them away, and cull through them under less hurried circumstances.

By this time, still on September 14, defendant was being arraigned before Judge McGohey of this court. In the course of these proceedings, his attorney objected to the wholesale seizure then in progress. Concerned by defendant's assertions, but considering himself insufficiently apprised of the facts to make any final disposition, Judge McGohey promptly ordered the seized files sealed to preserve the *status quo*. It would appear that when the INS agents were informed of this order, they had finished boxing up all of defendant's files and other materials to be described hereinafter. In any case, it is conceded that

---

* Herbert Kahn, Esq. has submitted a brief "amicus curiae". Although this court appreciates Mr. Kahn's interest and efforts, his application to so appear is denied chiefly for two reasons: (1) the nature of Mr. Kahn's interest in this case does not appear, and (2) there are no compelling reasons for this court to permit or require amicus curiae intervention.

these materials were sealed in 95 cartons and stacked in a locked room at INS headquarters. Most of these 95 cartons contained case files relating to cases and clients of defendant. They also contained, however, checkbooks, memoranda and other more or less personal records of the defendant. Finally, two typewriters were included among the seized materials.

It is conceded that no search warrant was obtained by the agents; moreover, the government does not seriously urge, let alone demonstrate, that it was confronted with an emergency situation wherein there was no time or opportunity to obtain a search warrant.

This motion was argued before the undersigned on September 25, 1967 and again on the following day. At the argument, the government in effect conceded that the seizure of 95 cartons of Kleefield's records was excessively broad. In any event, this court on September 27, 1967 entered an order directing the government to return the contents of all of the 95 cartons to the defendant except for the following-described items:

1. Six case files which concededly relate to the subject matter of the 35 counts set forth in the indictment.

2. Samples of typewriting on the typewriters seized by the agents on September 14th.

These last-mentioned items were ordered sealed by this court and are in safekeeping in the vault of the clerk subject to further orders of the court.

The government endeavors here to support its conduct as a "search" incident to a lawful arrest and thus reasonable and not in derogation of defendant's Fourth Amendment rights. See Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Harris v. United States, 331 U.S. 145, 67 S. Ct. 1098, 91 L.Ed. 1399 (1947). In addition, recognizing that this sweeping pick-up on September 14 necessarily cast up a host of documents which were not the "fruits or instrumentalities of the crime", the government also relies upon Warden v. Hayden, 397 U.S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967), in support of its argument that the agents on September 14 were properly searching for evidence.

■ Upon the facts here presented, I conclude that the government's position is untenable. To begin with, it is not common practice in this court for the prosecution, upon the return by a grand jury of an indictment, to request immediately that the indictment be sealed and at the same time ask a bench warrant to issue for the defendant, particularly such a defendant as Kleefield, who is not only a practicing lawyer duly admitted to the bar of this court, but also a person with demonstrated professional and personal roots within this jurisdiction. Thus, I find it difficult, if not impossible, to conceive a rational basis for the government's action on September 14 unless it be inferred that the prosecutorial intention was to use the bench warrant as a lever for a "search incident to a lawful arrest". In other words, I conclude that this is a case where the agents entered defendant's office ostensibly to make an arrest but actually to conduct an exploratory search for evidence. Harris v. United States, supra at 153, 67 S.Ct. 1098; Go-Bart Importing Company v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931).

This unfortunate inference which I draw is bolstered further by the already mentioned circumstance that there was ample time for the government to obtain a specific, limited search warrant. The case as alleged against defendant presented no emergency conditions. Kleefield had been aware for months that the government was investigating his affairs as an immigration lawyer. Although it is said by the Assistant United States Attorney in charge of this case that defendant failed or refused to accept several invitations to appear before the grand jury and thus was "uncooperative", the prosecutor's office made no attempt to notify Kleefield that an indict-

ment had been returned and to request that defendant appear for arraignment, a common practice in this district where, as here, there is clear evidence that defendant has personal and professional roots in the community.[1] Finally, the specific allegations of the indictment indicate that the government agents and attorneys almost certainly could have recited sufficient factual allegations to a judge or commissioner in support of a search warrant. In sum, it is difficult to imagine a set of circumstances less likely to require an arrest without a warrant and a "search" or, more accurately on the facts here, a seizure, allegedly incident to such an arrest. See generally, Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

Defendant argues most strenuously that there was a "search" on September 14 which was so broad and exploratory in nature that it must be struck down for this reason alone. As stated hereinabove, I agree in the sense that I find that the agents, while purporting to arrest defendant under a bench warrant, actually intended, under the direction of the United States Attorney's office, to make an exploratory search for evidence. Strictly speaking, however, no search was actually conducted on September 14. Rather, there was a wholesale seizure made with the intention of conducting a later search for evidence. As I see it, a bench warrant for the arrest of an indicted defendant should not be used as a means to seize virtually all of the files from his office solely for the purpose of searching those files later for evidence to

be used against that defendant. See Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957). Moreover, nothing held or stated by the Supreme Court in its recent decision of Warden v. Hayden, supra, would serve to condone or support a general rummage of a defendant's office or home. Indeed, the Court in *Hayden* explicitly examined the record to determine that the search there was lawful before going on to rule that the Fourth Amendment was not violated merely because the otherwise lawful search cast up items merely evidentiary in nature.

Since the seizure on September 14 was unreasonable in derogation of the Fourth Amendment rights of defendant, it follows that those few remaining documents which have not been returned to defendant should be suppressed—i. e. the six case files and the typewriting samples now sealed in the clerk's office should be suppressed so far as the prosecution is concerned, at least until such time as circumstances warrant otherwise.[2] To suppress, however, is not to dissipate or destroy. With this consideration in mind, it is directed that defendant and his counsel may immediately have access to the sealed documents in this court for the purpose of inspecting and copying any or all of them. If and when such inspection and copying are completed, however, the originals of such documents are to be returned to the clerk and held by him subject to further orders of this court.

It is so ordered.

---

1. It also appears that the prosecutor's office knew the identity of Kleefield's lawyer. Nevertheless, no effort was made to follow the customary procedure of notifying counsel of the return of the indictment and requesting that he have his client appear for arraignment.

2. See, e.g., Rule 16(c), F.R.Cr.P. Also, though I can find no authority squarely in point, I am reluctant to presently foreclose any use by the prosecution of these six files and the typewriting samples for cross-examination of defendant and his witnesses at trial.