JUSTICE TRIEWEILER
dissenting.
I dissent from the majority’s conclusion that the seizure of Steven Stubbs’brass pipe by Deputy Steven Boyer was permissible pursuant to the stop-and-frisk exception to the warrant requirement under either the Fourth Amendment to the United States Constitution, or Article II, Section 11, of the Montana Constitution.
The majority correctly notes that our standard of review is whether there was substantial credible evidence to support the District Court’s findings, but then ignores that standard of review by substituting itself for the District Court as the finder of fact. This is particularly objectionable since the District Court’s factual findings were the basis for its application of the restrictive language set forth in Terry v. Ohio (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889.
For example, in Terry, the Supreme Court upheld the validity of a protective search for weapons in the absence of probable cause to arrest where there is an articulable suspicion that an individual is armed and dangerous, but restricted the circumstances permitting such a search and the scope of any search conducted under these circumstances. Here, Stubbs does not disagree that a stop-and-frisk search was justified in the first instance. He contends that the search of his pocket and withdrawal of a brass pipe exceeded the permissible scope of the search because it was plainly not the weapon with which the investigating officer was concerned when he commenced the search. In that regard, the Supreme Court stated in Terry that:
This Court has held in the past that a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. Kremen v. United States, 353 U.S. 346 [77 S.Ct. 828, 1 L.Ed.2d 876] (1957); Go-Bart Importing Co. v. United States, 282 U.S. 344, 356-358 [51 S.Ct. 153, 157-158, 75 L.Ed 374] (1931); see United States v. Di Re, 332 U.S. 581, 586-587 [68 S.Ct. 222, 224-225, 92 L.Ed. 210] (1948). The scope of the search must be “strictly tied to and justified by” the circumstances which rendered its initiation permissible. Warden v. Hayden, 387 U.S. 294, 310 [87 S.Ct. 1642, 1651-1652, 18 L.Ed.2d 782] (1967) (Mr. Justice Fortas, concurring); see, e.g., Preston v. United States, 376 U.S. 364, 367-368 [84 S.Ct. 881, 883-884, 11 L.Ed.2d 777] (1964); Agnello v. United States, 269 U.S. 20, 30-31 [46 S.Ct. 4, 5-6, 70 L.Ed. 145] (1925).
*376 ... And in determining whether the seizure and search were “unreasonable” our inquiry is a dual one — whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.
Terry, 392 U.S. at 17-20, 88 S.Ct. at 1878-1879 (emphasis added).
In Terry, the court went on to add that:
A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. Warden v. Hayden, 387 U.S. 294, 310 [87 S.Ct. 1642, 1651-1652, 18 L.Ed.2d 782] (1967) (Mr. Justice Fortas, concurring). ...
... Thus, evidence may not be introduced if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation. Warden v. Hayden, 387 U.S. 294, 310 [87 S.Ct. 1642, 1651-1652, 18 L.Ed.2d 782] (1967) (Mr. Justice Fortas, concurring).
... The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.
Terry, 392 U.S. at 25-29, 88 S.Ct. at 1882-1884.
The significance of the above language is that in this case, it was a fact-finding function of the District Court to determine whether when Officer Boyer discovered and removed a brass pipe from Stubbs’ pocket he was acting within the scope of his original justification for frisking Stubbs. In performing that fact-finding function, after listening to the direct testimony and cross-examination of Officer Boyer, the District Court found that:
Office Boyer saw a holstered gun on the Defendant’s passenger seat and an empty holster on the same seat (of a size sufficient to hold a fair-sized sidearm). ...
Officer Boyer made it clear that his apprehension was created by the empty holster on the seat of the car, coupled with what appeared to be movement by the Defendant of the Defendant’s hands just before Officer Boyer ordered the Defendant to place his hands in view, and the absence of the sidearm that belonged in the *377 empty holster. In the course of the patdown search, Officer Boyer found a small “marijuana” pipe in the Defendant’s jacket pocket, as well as some rounds of .38 ammunition in the defendant’s trouser pocket. The pipe was about 21/2 inches long with an outside diameter of about 3/4 of an inch ....
Officer Boyer’s “articulable suspicion” was that the empty holster gave rise to concern that the Defendant may still have that weapon.... Once Officer Boyer commenced his search, however, he did it in the manner that Officer Byrnes had taught him, i.e., a custodial search. The custodial search exceeded the scope of Terry, and the evidence acquired by that search should be suppressed. The District Court’s finding that removal of a two and one-half inch
long brass pipe with a three-quarter inch diameter from Stubbs’ pocket was beyond the scope of a pat-down search, justified by concern about the presence of a firearm with a four to six inch barrel, is fully supported by substantial evidence in the record.
While the majority chooses that portion of Boyer’s testimony which indicates he was looking for weapons at the time he frisked Stubbs, the District Court was justified in relying on that part of Boyer’s testimony which indicated that his sole justification for frisking Stubbs was the missing revolver from the empty holster on the front seat of Stubbs’ car. In response to the following question during cross-examination, Officer Boyer gave the following answer:
Q. Why did you think there might be a weapon?
A. Well, because of the large amount of ammunition that was on the dash, on the floor, on the seats. There were two guns on the front seat that I could see, one in a holster and an empty holster and I didn’t know where the gun was that belonged in the other holster, the empty holster.
Furthermore, the State’s own evidence established that a two and one-half inch long brass pipe could not reasonably be mistaken for a weapon.
In an effort to show that Boyer’s removal of the brass pipe was reasonable under the circumstances, the County Attorney produced LaBeth Spain as a witness at the suppression hearing. Ms. Spain is an investigator for the Lincoln County Public Defender’s Office who had prior training as a police officer. She was asked to demonstrate for the court a “pat-down search” and remove suspicious objects from the pockets of the person she searched. Significantly, the person she searched in open court had a pipe similar or identical to the one taken *378 from Stubbs in his left rear pocket. Spain did not find it necessary to remove the pipe as part of a pat-down search for potential weapons.
The District Court’s finding that seizure of Stubbs’ brass pipe was not reasonably related to the original justification for frisking Stubbs is supported by the evidence presented at the District Court’s suppression hearing, and therefore, should be affirmed. Based on those findings, the pipe should have been suppressed pursuant to the U.S. Supreme Court’s decision in Terry v. Ohio and could not have formed any part of the basis for Stubbs’ arrest.
Michigan v. Long (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201, does not support the majority’s conclusion in this case. The issue in that case was whether a search pursuant to the stop-and-frisk principle is limited to the subject’s person, or may be extended to those areas of a vehicle which are within the subject’s immediate control. After holding that the principle extended to those areas of the vehicle within the subject’s immediate control, the Supreme Court allowed seizure of contraband which was in plain view. Stubbs’ brass pipe was not in Officer Boyer’s plain view until he removed it from Stubbs’ pocket.
Neither does Minnesota v. Dickerson (1993), 113 S.Ct. 2130, 124 L.Ed.2d 334, support the majority’s decision. In that case, the Supreme Court limited seizure of contraband pursuant to a stop-and-frisk search to only those items which are immediately identifiable based on touch. The court specifically held as follows:
Where, as here, “an officer who is executing a valid search for one item seizes a different item,” this Court rightly “has been sensitive to the danger ... that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will.” Texas v. Brown, 460 U.S., at 748, 103 S.Ct., at 1546-1547[, 75 L.Ed.2d 502] (Stevens, J., concurring in judgment). Here, the officer’s continued exploration of respondent’s pocket after having concluded that it contained no weapon was unrelated to “[t]he sole justification of the search [under Terry:] ... the protection of the police officer and others nearby.” 392 U.S., at 29, 88 S.Ct., at 1884[, 20 L.Ed.2d 889]. It therefore amounted to the sort of evidentiary search that Terry expressly refused to authorize ....
Dickerson, 113 S.Ct. at 2138-39.
Here, although Boyer was capable of determining, based on his frisk of Stubbs, that the brass pipe in Stubbs’jacket pocket was not the weapon with which Stubbs was concerned, he had no reason, *379 according to his testimony, to suspect that it was a pipe. Therefore, Dickerson did not allow its seizure.
The majority bases its conclusion on Boyer’s testimony that he thought the lump in Stubbs’ pocket could have been a deadly weapon, such as a knife or a derringer. That testimony was contradicted by other evidence, including the demonstration offered by the State in the District Court’s presence. By basing its decision on some evidence to the exclusion of other evidence, the majority has engaged in a balancing act reserved for the finder of fact — in this case, the District Court.
Furthermore, I would not, as the majority has done, consider the merits of a search pursuant to an arrest that by the officer’s own admission had not been made. For good measure, the majority concludes that in addition to authorization under stop-and-frisk principles, Officer Boyer was justified in searching Stubbs’pocket pursuant to a valid arrest. However, Boyer testified at the suppression hearing that he had made no arrest of Stubbs at the time that he withdrew the brass pipe from his pocket. More importantly, the County Attorney represented to the District Court that he was not justifying the search of Stubbs based upon a valid arrest. The County Attorney also conceded to the District Court that the only basis for the frisk of Stubbs was the missing gun from the holster on the front seat of Stubbs’ vehicle. The following discussion was had:
THE COURT: The fine distinction that I’m trying to make, the only thing that he was concerned about is the missing, the holster. Nothing else really is giving him a basis for the frisk.
MR. SPENCER: That is the basis.
THE COURT: Just a DUI stop but there is enough there for him to do what he did. I don’t have a problem with that. The problem that I have is he should only be looking for something large enough for that holster and that is different than being concerned about this person who may be dangerous to him, better look out for himself. That is a different situation.
The standard reads all the same. And Terry reads it from the standpoint — Terry is not a DUI stop.
MR. SPENCER: I agree that the gun, the missing gun triggers it. If you don’t have the missing gun, you don’t really have a reason to do what the officer did. That is the trigger.
In other words, the majority has not only substituted itself for the fact finder in this case, it has sua sponte raised issues that were never *380 raised in the District Court, and therefore, should not be the basis for its decision.
For these reasons, I dissent from the majority opinion. I would affirm the order of the District Court suppressing the item seized from Stubbs’ pocket during the course of Boyer’s pat-down search, and based on Boyer’s testimony that the pipe was part of the basis for his arrest of Stubbs, I would also affirm the remainder of the District Court’s order.
JUSTICE HUNT joins in the foregoing dissenting opinion.