# UNITED STATES *v.* WALLACE & TIERNAN CO.
## ET AL.

No. 416.   Argued March 29, 1949.—Decided May 2, 1949.

794

*Arnold Raum* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Bergson* and *Beatrice Rosenberg.*

*Charles H. Tuttle* argued the cause for appellees. With him on the brief were *William H. Edwards, Edward T. Hogan, Laurence J. Hogan* and *S. Everett Wilkins, Jr.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The basic question here is whether the Fourth Amendment's prohibition of unreasonable searches and seizures bars the United States from utilizing certain documentary evidence in this civil antitrust proceeding instituted in the United States District Court of Rhode Island. Subsidiary procedural questions involve the doctrine of *res judicata.*[1] We proceed at once to consideration of the important basic question since for reasons later given we reject the subsidiary *res judicata* contentions.

[1] Appellees have moved to dismiss this appeal taken by the United States under § 2 of the Expediting Act of February 11, 1903, 32 Stat. 823, 15 U. S. C. § 29, as amended, Act of June 25, 1948, § 17, 62 Stat. 869, 989. The decision appealed from was as follows: "The Government's 'request' for judgment and relief prayed for in

*First.* Whether the Government has a right to utilize the documentary evidence in this civil proceeding can be best understood by an immediate reference to this Court's holding in *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385. Appellees here contend that the *Silverthorne* holding is a complete and permanent bar to the Government's introduction of the documents as evidence, to the use of the documents to obtain other evidence, or for any other purpose.

The facts in the *Silverthorne* case as found by this Court were these: The Silverthornes having been indicted were arrested at their homes early in the morning and detained in custody for some hours. While so detained Government officers "without a shadow of authority" went to the office of their company and made a clean sweep of all the books, papers and documents found there. "All the employees were taken or directed to go to the office of the District Attorney of the United States to which also the books, &c., were taken at once." The District Court ordered all books, etc., returned on a finding that the search and seizure violated the constitutional rights of the parties. Photographs and copies of the papers having been made, a new indictment was

---

the complaint is denied and judgment may be entered dismissing the action without prejudice. It is so ordered."

This judgment followed the court's action in denying the Government's motions for production of documents essential to prove the Government's case. The record fails to sustain appellees' contention that the Government invited the court to enter this order denying relief and dismissing the action. That the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit so far as the District Court was concerned. *Wecker* v. *National Enameling Co.,* 204 U. S. 176, 181–182. See also *United States* v. *National City Lines,* 334 U. S. 573, 577, and *Bowles* v. *Beatrice Creamery Co.,* 146 F. 2d 774. The motion to dismiss the appeal is overruled.

returned based upon the knowledge thus obtained. Subpoenas were then issued calling for production of the original papers. Upon refusal to produce, one of the Silverthornes was imprisoned for contempt.

This Court viewed the whole performance of the unlawful search and seizure of the Silverthorne books and papers as an "outrage," planned or at least ratified by the Government. Under these circumstances it was held that the Government was neither entitled to use the original documents nor any knowledge obtained from the originals, the photostats, or the copies. The rule announced was that evidence or knowledge "gained by the Government's own wrong" is not merely forbidden to be "used before the Court but that it shall not be used at all." Other cases in this Court have applied the same rule.[2] It is an extraordinary sanction, judicially imposed, to limit searches and seizures to those conducted in strict compliance with the commands of the Fourth Amendment.

In the case before us, however, United States officers did not go to the appellees' offices and seize their documents. Officers served a court subpoena on appellees calling on them to produce certain designated documents for use in a grand jury investigation. Appellees challenged the subpoena on the ground that it was so broad and sweeping as to constitute an unreasonable search and seizure under the Fourth Amendment. The District Court at all times has rejected this contention, and appellees do not urge it here. Thus it cannot be thought that the form of the subpoena or the method of its en-

---

[2] *Weeks* v. *United States,* 232 U. S. 383; *Johnson* v. *United States,* 333 U. S. 10; *Go-Bart Co.* v. *United States,* 282 U. S. 344; *Byars* v. *United States,* 273 U. S. 28; *Gouled* v. *United States,* 255 U. S. 298; *United States* v. *Lefkowitz,* 285 U. S. 452; *Trupiano* v. *United States,* 334 U. S. 699; and *cf. Harris* v. *United States,* 331 U. S. 145; *Zap* v. *United States,* 328 U. S. 624; *Davis* v. *United States,* 328 U. S. 582.

forcement constitutes even a "constructive" search or seizure barred as "unreasonable" by the Fourth Amendment. *Oklahoma Press Co.* v. *Walling,* 327 U. S. 186, 202–208. And up to this point nothing that happened in this case is even remotely analogous to the situation that evoked this Court's condemnation in the *Silverthorne* case. But the District Court found and appellees here urge that subsequent developments in this case call for application of the *Silverthorne* rule. Those developments were as follows:

The grand jury before which the documents were produced returned an indictment against appellees and others charging violations of §§ 1 and 2 of the Sherman Act.[3] Shortly after we decided *Ballard* v. *United States,* 329 U. S. 187, the District Court on motion of appellees dismissed the indictment on the ground that the court practice of intentionally and systematically excluding women from the grand jury panel rendered the grand jury an illegally constituted body. On the same day the court granted appellees' motion for return of the previously impounded documents. Later the court ordered the Government to return a number of photostats that had been made of the original documents. In an opinion discussing return of the photostats the District Court reaffirmed its belief that the "subpoenas did not violate the Fourth Amendment and the Government was entitled to have the documents produced for presentation to a legal grand jury." The court held, however, that "when the grand jury turned out to be illegally constituted and the indictment was dismissed . . . the subpoenas amounted to unreasonable searches and seizures in violation of the Fourth Amendment . . . ."

In order to implement a congressional policy to have the grand jury a "truly representative" cross section of

---

[3] 26 Stat. 209, as amended 50 Stat. 693, 15 U. S. C. §§ 1, 2.

the community, we held in the *Ballard* case, *supra,* that exclusion of women from the grand jury required dismissal of an indictment. The effect of the District Court's holding here was to add to the *Ballard* requirement for dismissal of the indictment a further extraordinary sanction devised by this Court to prevent violations of the Fourth Amendment. For here there was no official culpability in issuance or service of the *subpoena duces tecum.* The sole ultimate reason for the District Court's application of the *Silverthorne* rule was that no women were on the grand jury, a circumstance that bears only a remote if not wholly theoretical relationship to search and seizure. We cannot agree that the *Silverthorne* rule requires such a result.

Aside from the limited extent to which the Fourth Amendment applies to the subpoena process, see *Oklahoma Press Co.* v. *Walling,* 327 U. S. 186, there are other reasons why the *Silverthorne* exclusionary rule should not be extended to the situation in this case. That rule stems from the Fourth Amendment. This Court has said that the Fourth Amendment command rests "upon the desirability of having magistrates rather than police officers determine when searches and seizures are permissible and what limitations should be placed upon such activities." *Trupiano* v. *United States,* 334 U. S. 699, 705; see also *McDonald* v. *United States,* 335 U. S. 451, 455–456. The *Silverthorne* search and seizure was made without any authority from a magistrate. And the seizure was so sweeping in nature that it probably could not have been authorized by a search warrant. *Weeks* v. *United States,* 232 U. S. 383, 393–394. The *Silverthorne* exclusionary rule as explained in that case and others is designed to safeguard the privacy of people, and to prevent seizure of their papers and property except in compliance with valid judicial process. As tersely stated in the *Silverthorne* case the rule's purpose is to

prevent the Fourth Amendment from being reduced to "a form of words."

Only by engaging in the most exaggerated apprehensions can the action of the prosecuting officers in this case be considered a threat to the Fourth Amendment. They went to the court for their subpoena. The court approved it. There is no claim that the subpoena was obtained or served in an improper manner or that any Government officer committed a wrong in the way the documents were handled or returned. At least many of the documents were highly relevant to the serious monopoly offenses charged against appellees. That there were no women on the grand jury did not contribute to any invasion of appellees' privacy. Dismissal of the indictment could not transform what had been proper official conduct into the type of conduct condemned in the *Silverthorne* and other cases.

It is true that a metaphysical argument can be made to support a strained analogy between the situation here and that in the *Silverthorne* and other cases. That argument is that the "illegal" grand jury was only a "so-called" grand jury, and that the considered judicial command for production of papers before it must be treated as though the court had ordered production of papers before a group of appellees' competitors. This argument has a superficial plausibility on the word level, but if our attention is directed to substance rather than symbols the speciousness of the argument is exposed.

Whatever injury appellees may have suffered resulted from the absence of women on the grand jury and that injury has been remedied by freeing appellees from prosecution under the indictment. Furthermore the search and seizure here, if such it can be called in any true sense, was not the kind that has prompted this Court to hold that the Government has by wrongful conduct of its officers forfeited all opportunity to make use of

evidence unlawfully seized. We decline to extend the *Silverthorne* rule to such an extent. The Fourth Amendment, important as it is in our society, does not call for imposition of judicial sanctions where enforcing officers have followed the law with such punctilious regard as they have here. We hold that dismissal of the grand jury because no women were on it is no sufficient reason for holding that the Government is barred from making use of the summoned documents.

*Second.* At the same time the District Court ordered the indictment dismissed it also ordered that the documents be returned to the defendants. The Government did not appeal from the order dismissing the indictment. See *United States* v. *Hark,* 320 U. S. 531, 535–36. It is contended that by its failure to appeal, the Government is barred by the doctrine of *res judicata* from challenging the dismissal and return orders.

Assuming that the Government by failure to appeal is barred from challenging the court's holding that the grand jury was illegally constituted and that the documents were properly ordered returned, it by no means follows that these orders permanently barred the Government from any future use of the documents as evidence. For the Government forfeited no rights to use the documents in a future valid proceeding by failing to appeal from the dismissal of the indictment—a dismissal it believed to be supported by our holding in the *Ballard* case. And dismissal of the pending indictment after holding the grand jury illegal created a situation where appellees were entitled to return of their papers as a matter of course. Consequently an appeal from the return order alone, even if such an appeal could have been taken, would have availed the Government nothing. For the foregoing reasons we hold that orders dismissing the indictment and requiring return of the documents did not affect the

Government's right to have the documents produced in these civil proceedings.

For the same reasons we hold that the Government's right to demand production in this civil case was not affected by the District Court's later order requiring return of photostatic copies of the documents. Return of the photostats, like return of the originals, necessarily followed from the dismissal of the indictment. This was recognized by the District Court when in directing return of the photostats the court said, "Since these motions stem from Indictment No. 6055, the Clerk is ordered to make the motions, the hearings thereon, and this opinion part of the record of said indictment."

*Third.* For their claim of *res judicata* appellees also rely on a third order of the District Court "precluding and restraining the United States from using in any way or for any purpose any knowledge, information or evidence obtained from or contained in any of the aforesaid illegally seized papers and documents." This order was entered prior to the court's action in this civil proceeding in which it quashed the *subpoena duces tecum* and refused to order production of the documents. Appellees contend that this order was a "decree of judicial outlawry" against any future Government use of the papers or knowledge acquired from them; that the Government could have but did not appeal from the order; that for this reason the "decree of judicial outlawry" had become final and binding upon the Government at the time it asked for production in this proceeding. The Government denies that the order had or was intended to have the broad proscriptive effect urged by respondents. In addition, the Government contends that the order was interlocutory and therefore not appealable. On this latter premise the Government relies on "familiar law that only a final judgment is *res judicata* as between the parties." *Merriam Co.* v. *Saalfield,* 241 U. S. 22, 28.

To some extent both phases of the contention—scope of the order and its appealability—depend upon whether the proceeding was handled by the court as an independent plenary proceeding or one to suppress evidence at a forthcoming trial. For a judgment in an independent plenary proceeding for return of property and its suppression as evidence is final and appealable and the scope of relief in such a case may extend far beyond its effect on a pending trial; but a decision on a motion to return or suppress evidence in a pending trial may be no more than a procedural step in a particular case and in such event the effect of the decision would not extend beyond that case. Whether a motion is to be treated as independent and plenary or as merely a procedural step in a pending trial must be determined by particular circumstances. See *Cogen* v. *United States,* 278 U. S. 221. The circumstances here we think show that the order now considered was not one of permanent general "outlawry" against all use of the documents involved, but an order to prevent their use in a particular criminal proceeding then pending.

After the court had dismissed the indictment because no women were on the jury, the Government filed in the same District Court an information charging the same offense. The defendants filed a motion in the information proceeding (1) to dismiss the information; (2) in the alternative to dismiss and expunge those facts of the information based on knowledge obtained from the papers and documents; (3) to preclude and restrain the United States from using in any way or for any purpose knowledge or evidence obtained from or contained in the documents. The court denied (1) and (2) but granted (3). The motion, court opinion, and court order bore the title and number (6070) of the criminal information proceeding. During the argument colloquies took place between court and counsel which emphasized that the motion related to "Criminal 6070."

The motion was argued at length before the district judge. Government counsel took the position that the court's order on the motion would not be appealable. See *Cobbledick* v. *United States,* 309 U. S. 323; *United States* v. *Rosenwasser,* 145 F. 2d 1015. He therefore asked the court to be careful about the form of the order, expressing apprehensions that counsel for appellees would later argue that the order entered in the criminal proceeding was broad enough to bar use of the documents in the civil proceedings. Government counsel indicated his plans subsequently to present the issue of the Government's right to use the documents in this civil proceeding, taking the position that an appeal would then lie. He therefore asked the court to await entry of any order until his plans could be carried out. Appellees' counsel told the court that "The plans which Mr. Kelleher has concern Civil 6055. This is Criminal 6070." And the court told Government counsel that the preclusion order would preclude use of the documents "only in this [criminal] action." The court further said to Government counsel that if the court made a wrong order "Then you can go ahead as you contend or plan to go ahead in your civil action." Finally, just before conclusion of the hearing on the order, the court told Government counsel, "I don't see how this is going to prejudice you in some other case, and this Court is only concerned with 6070 [criminal information charge] at this time, as I understand it."

We hold that the proceedings leading up to the preclusion order must be deemed a part of the criminal proceedings, see *Cogen* v. *United States,* 278 U. S. 221, 227; that the order did not preclude use of the documents except in these proceedings; and that this order does not stand as a bar to consideration of the availability of the documents for use as evidence in this civil case.

Other contentions of appellees have been considered and found to be without merit.

*Reversed.*