**UNITED STATES of America,**
**Appellant,**

v.

**HARTE-HANKS NEWSPAPERS, Abilene, Texas, et al., Appellees.**

**No. 16927.**

United States Court of Appeals
Fifth Circuit.

April 24, 1958.

Daniel M. Friedman, Henry M. Stuck-ey, Paul A. Owens, Attys., Dept. of Justice, Washington, D. C., Heard L. Floore, U. S. Atty., Fort Worth, Tex., Victor R. Hansen, Asst. Atty. Gen., Ernest L. Folk, III, Atty., Dept. of Justice, Washington, D. C., for appellant.

Dan Moody, Austin, Tex., T. J. McMahon, McMahon, Smart, Sprain & Wilson, Abilene, Tex., for appellees.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents the validity *vel non* of an order of the court below, entered at the outset of a Grand Jury investigation, denying the Government the right to use before the Grand Jury information obtained by its agents in their examination of the books of the appellees, Harte-Hanks Newspapers, Banner Publishing Company, Marshall Publishing Company, and Denison Herald, Inc. The court entered the order granting appellees' motions upon its finding that, prior to the issuance of the subpoenas duces tecum under which the records were required to be produced before the Grand Jury, appellees had submitted to the Government for examination their books, records and files upon their understanding that they would not be used in connection with any criminal investigation or prosecution.

The trial court heard the testimony of three witnesses, Bruce Meador, a representative of the four corporations, T. J. McMahon, their attorney, and Ural E. Horton, Jr., Special Agent of the Bureau of Investigation, Department of Justice. The testimony was in sharp conflict. Meador and McMahon testified that, when the government agent requested the right to examine the books, records and files of the four newspapers, he was informed that these records would be submitted to him on condition that they be not used in connection with any criminal investigation or prosecution, and he was requested to note this condition in his report to the Government.

Horton testified that no such condition was expressed or discussed, that he advised Meador and McMahon that they had a right to refuse to produce the records if they desired, and advised them further that the records could be used against them by the Government, stating further that he did not know the purpose of the investigation then in progress. He testified that he had no authority to promise any person that he would be "free from any prosecution" concerning any statements made or records furnished. He introduced a long letter addressed to him by Meador which listed the documents furnished and gave certain requested information. This letter, which accompanied Meador's delivery of the corporate records to Horton, made no mention of the condition testified by Meador and McMahon as having been imposed upon the surrender of the records to the Government. The letter also offered to furnish further information if requested to do so. The court resolved the conflicts between the witnesses in favor of appellees.[1]

1. "After having heard the testimony, however, and using the Chancellor's power to pass upon the credibility of the witnesses who have testified, I am of the opinion and find that the Defendants, who and which were being exposed for the divulgence of testimony which could be used before the Grand Jury in a criminal

We are not able to say that these findings of fact are clearly erroneous and we accept them as the predicate upon which our decision will rest. We recognize, however, as do the appellees, that there was no express agreement between the Government and appellees, and that the "understanding" grew out of the conditional furnishing of the records and was an understanding held by appellees alone, it being "quite immaterial," in the court's mind, whether "it was agreed to by the Government."

The motions set forth the condition upon which the corporate records had been turned over to the Government,[2] and prayed solely that "the subpoenas be suppressed and * * * said condition fully respected." The motions did not allege that any of appellees' constitutional rights had been violated, but the court, in its memorandum opinion, held that "constitutional provisions" would be violated if use of the records before the Grand Jury should be permitted.[3] The order of the court did not

quash or suppress the subpoenas, but commanded only that the restriction placed upon the use of the records by appellees be respected.[4]

■ What we have before us, therefore, is an order entered by the District Court at the beginning of a Grand Jury investigation which prohibited in advance the use before the Grand Jury of the information obtained by the government agent from appellees' records. In our opinion the order was without legal justification. Its language showed clearly that the denial of use of the records and information before the Grand Jury was predicated solely upon its declaration that the restrictions and conditions should be respected and enforced. These restrictions were unilateral only. Appellees knew that Horton was not advised of the purpose of the investigation and that, as a mere field agent, he had no authority to agree to any restrictions. The most appellees contend is that they requested that he advise the Government of the restrictions when he made his report.[5]

investigation; that such admonition and pledge was exacted by the attorney for these respective publications, and that that understanding, whether it was agreed to by the Government or not is quite immaterial, was to the effect that such information, as, is and was furnished, should not be used in any criminal investigation or by the Grand Jury for such purpose. * * *

"* * * This is a country of great liberty, gentlemen, and we must all stand for it. This information must not be used before the Grand Jury for criminal investigation."

The court found further that the records covered by the subpoenas were to be used in connection with a projected criminal prosecution.

2. "The request was made of one of the attorneys for one or more of the above named parties. Said attorney agreed to submit such letters, papers and records for examination by said representative upon the condition that none of them would be used in any manner in the prosecution of any action against any person or company or corporation named or referred to therein. Said papers were submitted to said representative of the Government upon the terms above stated. * * * The

use of any of said papers in any attempted prosecution would be in violation of the conditions; and the Court should suppress the subpoenas and order that the above stated condition should be respected."

3. "It seems quite unnecessary to cite authorities, because one of the fundamentals of a free government denies the right of the servants of the people to secure evidence, or testimony, in the manner indicated for use against the citizen. It would violate not only constitutional provisions, but the very thought of liberty and freedom itself."

4. "It is, therefore, the order and judgment of the Court, *that said restrictions and conditions be respected and enforced,* and that any information obtained by the Government Agents through the examination of said books, records, files and correspondence shall not be used before the Grand Jury in any criminal investigation." [Emphasis added.]

5. Here is the way appellees deal with this question in their brief: "Appellees' attorney told Mr. Horton * * * that he 'wanted to know whether or not the information that he was seeking was to be used by him in furtherance of any crim-

Appellees did not follow up their request or withhold the records until they learned whether it would be respected—even if it be assumed that some agent of the Government had the authority to enter into such an agreement. Cf. United States v. Ford (Whiskey Cases), 1878, 99 U.S. 594, 25 L.Ed. 399.

Appellees pitch their argument entirely upon the contention, not raised in their motions, that the evidence ought to be withheld from the Grand Jury on the ground that it was illegally obtained in violation of appellees' rights under the Fourth and Fifth Amendments to the Constitution.

■ The Fifth Amendment, of course, does not apply to corporations,[6] and it is perfectly clear that the records were not obtained by any illegal search or seizure in contravention of the Fourth Amendment.[7] Horton entered the premises of appellees with the consent of Meador after having 'phoned for an engagement. Even under appellees' evidence, he made no threats or misrepresentations, employed no stratagems, practiced no concealment, coercion or fraud. He did not seize any records at all. They were delivered to him voluntarily by Meador two weeks after the request was made. Appellees and their attorney knew all the while that they had no assurance from the Government that any condition which might have been imposed would be honored. We find nothing in appellees' argument or in their authorities to justify the ruling of the court below.

■ It is established law that suppression of evidence prior to an indictment should be considered only when there is a clear and definite showing that constitutional rights have been violated. Cf. United States v. Wallace & Tiernan Co., supra, 336 U.S. 793, 796, 69 S.Ct. 824. And under our holding in Eastus v. Bradshaw, 1938, 94 F.2d 788, the validity of his entire proceeding is subject to serious doubt. In White v. United States, 1952, 194 F.2d 215, 217, certiorari denied 343 U.S. 930, 72 S.Ct. 760, 96 L.Ed. 1340, we held that one proceeding, as are appellees here, under Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C.A., could not hold the Internal Revenue Bureau, as a matter of contract, to its declared policy of granting immunity to persons making voluntary disclosure.

■ The office of the Grand Jury under our system is an important one, and its ability to function should not be limited by questions of propriety, Blair v. United States, 1919, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979, it being vital that it possess the power to conduct

---

inal prosecution.' The agent stated that he did not know. Appellees' attorney then stated that he wanted the examination 'to be definitely on condition that what he learned or what he copied or the information that he got from our files, * * * were not to be used by him in furtherance of any criminal prosecution.' The agent said that he did not know whether it * * * 'would be used in that manner or not;' and appellees' attorney then stated that he was sure the agent would file a report, and that he 'would appreciate it very much if you would incorporate in the report the substance of this conversation and the condition that I have attached to your going into these files.'"

6. Genecov v. Federal Petroleum Board, 5 Cir., 1944, 146 F.2d 596, 597, certiorari denied 324 U.S. 865, 65 S.Ct. 913, 89 L.Ed. 1420; United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 726, 64 S.Ct. 805, 88 L.Ed. 1024.

7. Appellees cite in support of their Fourth Amendment contentions United States v. Wallace & Tiernan Co., 1949, 336 U.S. 793, 69 S.Ct. 824, 93 L.Ed. 1042; Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Go-Bart Importing Co. v. United States, 1931, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; and Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649. Every one of the cases involved an actual forcible search of the premises of a litigant without warrant, and no case cited bears any resemblance on its facts or announces any principle which would support the action of the court below.

broad investigations [8] fettered only by the requirement that constitutional rights be not infringed.[9]

The order of the District Court granting the motions is reversed and the cause is remanded for the entry of an order denying them.

Reversed and remanded.

---

8. The Supreme Court, in Costello v. United States, 1956, 350 U.S. 359, 362, 76 S. Ct. 406, 408, 100 L.Ed. 397, indicated that the inquisitorial powers of the. Grand Jury, as was true of its English progenitor, should be so broad as to be free "from control by the Crown or judges."

9. By the provisions of 15 U.S.C.A. § 32 and § 33 immunity is granted to any natural person testifying or producing records before a grand jury investigating possible violation of the anti-trust laws.