**CHESTERFIELD FINANCE COMPANY et al., Appellants,**

v.

**Hon. Will WILSON, Attorney General, et al., Appellees.**

No. 3450.

Court of Civil Appeals of Texas.

Eastland.

Oct. 16, 1959.

Rehearing Denied Nov. 6, 1959.

**480**

Carl C. Mays, Dallas, for appellants.

Will Wilson, Atty. Gen., Ernest John Flowers, Asst. Atty. Gen., for appellees.

GRISSOM, Chief Justice.

A finance law division of the office of the Attorney General was created to enforce the usury laws of Texas. Visitorial letters were served on Chesterfield Finance Company et al. by the Attorney General's assistants in that division. Upon presentation of such letters to Chesterfield Finance Company et al., they objected to the Attorney General's copying their records for the purpose of using same in a suit to enjoin them from violating the usury laws of Texas. The Attorney General desired to make copies of some of their records for the purpose of using same in a suit to enforce the usury laws, acting upon the theory that said companies pretended to be loan brokers and charged brokerage fees, or commissions, for obtaining loans when, in fact, they were not brokers, but lenders of money who were charging usurious interest under the guise of brokers' commissions.

Chesterfield Finance Company and others sought an injunction to prevent the Attorney General from copying their records for that purpose. They alleged the Attorney General's authority was found in Section 22, Article 4, of the Constitution of Texas, Vernon's Ann.St., and the visitorial statutes of Texas, Articles 1366–1371, inclusive, and that his authority was limited to the right to copy plaintiffs' records for use as evidence only in cases involving (1) violation of the corporations' charter rights and privileges, (2) violation of the regulatory provisions of some statute enacted for the purpose of controlling such corporations, or (3) violation of some penal statute, and that the Attorney General would, unless restrained, copy their records for use in an injunction suit against plaintiffs and would thereby exercise a power of search and seizure not authorized by said statutes and Constitution, but in violation thereof. The court granted a restraining order but, upon a hearing, refused to grant an injunction restraining the Attorney General from making such copies for said purpose. Plaintiffs have appealed.

Appellants' points are as follows: (1) "Under the Visitorial Statutes the Attorney General was without authority to make copies and seizures of any records of Appellants to be used in evidence in behalf of the state in injunction litigation between the state and Appellants;" (2) "Under the Visitorial Statutes the Attorney General's right of copying and seizing from Appellants' records is limited to use of copies of such records to be used in evidence in suits involving violations of Appellants' charter rights and privileges or violations of regulatory provisions of some statute enacted for the purpose of controlling and regulating Appellants' internal affairs or violation of some penal statutes" and (3) "The attempt of the Attorney General to make copies and seizures of records of Appellants to be used in evidence in injunction litigation between state and Appellants constituted an unreasonable search and seizure."

Appellants do not question the right of the Attorney General to make an "unlimited and unrestricted examination of Appellants' books and records" but they contest his authority to "make copies and seizures" of Appellants' records to be used in evidence in injunction suits against them under Article 4646b. Appellants say there is no dispute as to the facts, the gist of which has been stated. Appellants contend the law does not authorize the making and

using of said copies in suits by the Attorney General to enjoin violation of the usury laws. Although appellants' points speak of making copies and "seizures" by the Attorney General, the only question is as to the right of the Attorney General to make copies for said purpose. The Attorney General has not attempted to and does not claim the right to "seize" the records of appellants.

Appellants say that the only authority construing the visitorial statutes, enacted in 1907, when President Theodore Roosevelt was engaged in "trust-busting" of monopolies, is Humble Oil and Refining Company v. Daniel, Tex.Civ.App., 259 S.W.2d 580, 581, in which a writ of error was refused "no reversible error" by the Texas Supreme Court and certiorari was denied by the United States Supreme Court, 347 U.S. 936, 74 S.Ct. 631, 98 L.Ed. 1086. In that suit the Attorney General intervened in a tax suit filed by Montgomery County against Humble and delivered to Humble visitorial letters demanding an inspection of its records and asserting the right to make copies thereof for use by the state in a tax suit against Humble. They also call attention to Gilmer Oil Company v. Ross, 178 Okl. 125, 62 P.2d 76, by the Supreme Court of Oklahoma, in which it was held that the visitorial powers of the Attorney General of Oklahoma could not be used in a proceeding to assess non-rendered property for ad valorem taxation. Appellants assert an analogy between the provisions of our Constitution and statutes applicable to taxing and usury matters within the purview of the visitorial statutes. They say that our usury laws do not create property rights in the state, or in the public, only private rights, and that Article 4646b does not contain any penal provision and, therefore, no violation of a penal statute is involved. They say that the only basis upon which it can be held that the visitorial statutes are constitutional is by construing them, as they were in the Humble-Daniel case, to the effect that they do not grant the Attorney General the un-

limited and unrestricted right to copy from their records information to be used by the state in ordinary litigation, such as an injunction suit involving taxes or usury.

In the Humble-Daniel case it was said that the right to copy and seize from the records was limited to their use in suits involving "the violation of the corporation's charter rights and privileges or violation of the regulatory provisions of some statute enacted for the purpose of controlling and regulating such corporations or violations of some penal statute." Appellants admit in their brief that the Attorney General has the unrestricted and unlimited right to examine and inspect its records under the visitorial statutes. The only question presented is whether or not he has the right to copy appellants' records for the purpose of using them in suits against appellants to enjoin violation of the usury laws of Texas. We do not construe the Humble-Daniel case as authority for the proposition that he cannot make copies of appellants' records for use against them in suits to enforce the usury laws. All that was actually decided in that case was that the Attorney General was not authorized to make copies of Humble's records for the purpose of using them in a tax suit then pending.

Article 1368 provides that the Attorney General may copy the records of any corporation authorized to do business in Texas which he thinks may tend to show that it "has been or is engaged in acts or conduct in violation of its charter rights and privileges, or in violation of any law of this State". Article 1369 provides that he shall not make the information thus obtained public, or use said copies, except in a judicial proceeding to which the state is a party, or in a suit by the state to forfeit the charter of such a corporation, or to collect penalties for a violation of the laws of this state, or for the information of any officer charged with enforcement of its laws. Article 1370 provides that any domestic corporation which shall refuse to permit the Attorney General to make

such copies shall have its charter cancelled. Article 1371 states that said provisions are cumulative of all other means afforded by law for securing testimony, or for inquiring into the charter rights and privileges of corporations. In enacting the visitorial statutes of 1907, including Articles 1368, 1369 and 1370, the legislature found there was an emergency and an imperative public necessity therefor because there was then no adequate law authorizing the Attorney General, among other things, to make copies of the records of corporations when they were engaged in acts or conduct in violation of their charter rights and privileges, or other laws of this state, or to inquire into the charter rights of corporations. Article 4646b, enacted in 1943, provides that the Attorney General may institute a suit to enjoin any corporation engaged in the business of habitually loaning money at a usurious rate of interest. In United States v. Harte-Hanks Newspapers, 5 Cir., 254 F.2d 366, 369, it was held that the 5th amendment to the United States constitution, which provides that no person shall be compelled in a criminal case to be a witness against himself, does not apply to corporations. In Watts v. Mann, Tex.Civ.App., 187 S.W.2d 917, 925, the court said: "Usury is defined and denounced by the Constitution. Independently, therefore, of the express mandate of the Constitution, the legislature under its general lawmaking powers, is authorized to adopt such measures as it may deem appropriate to prevent, suppress or minimize it; its discretion in that regard being circumscribed only by such inhibitions as are imposed by the Constitution. The effect of the constitutional provision (self-executing in that regard) was to make 'usury a quasi offense.' Hemphill v. Watson, 60 Tex. 679. Usurers therefore are law violators, guilty of committing a 'quasi offense.' * * . * The real objective of the Act was to break up the practice or business of the habitual usurer—a business recognized by the Act as inimical to the public welfare."

We believe that the contemplated suit by the Attorney General against appellants to enjoin violation of the usury laws would involve a violation of their charter rights and privileges and violations of statutes enacted for the purpose of controlling and regulating them, as required by the Humble-Daniel case. Under the authority of Article 4646b the Attorney General is authorized to enjoin violations of the usury laws. The usury laws were, among other things, enacted to control and regulate corporations lending money. Certainly, the usury laws apply to both corporations and individuals. Article 5069, Vernon's Ann. Revised Statutes of Texas and Article 16, Section 11, of the Texas Constitution clearly show that it is contrary to public policy and unlawful to charge a usurious rate of interest. If appellants habitually charge usurious interest for the loan of money, they violate the law. Watts v. Mann, Tex. Civ.App., 187 S.W.2d 917. If they do so, they violate the conditions under which the state granted them certain rights and privileges. If they violate the usury law they have violated the conditions under which they were granted the right to transact business in Texas. They have used means which the state expressly denounces to achieve their corporate purposes. Suits brought by the Attorney General under Article 4646b concern violations of the regulatory provisions of a statute enacted for the purpose of controlling and regulating corporations. The Constitution and statutes declare the public policy of Texas against usury. They regulate and control the business of corporations that lend money. We think the suit contemplated by the Attorney General involves violation of the regulatory provisions of statutes enacted for the purpose of controlling corporations. Article 4646b provides means for the state to enforce its laws regulating the business of lending money. After our Supreme Court had held that the law did not then grant the state and its officers such power, said statute was enacted for the purpose of granting the state and its officers the right to

enjoin violations of the usury laws. We hold that the court did not err in refusing to enjoin the Attorney General from making copies of appellants' records for use in suits to enjoin violations of the usury laws.

The judgment is affirmed.