**UNITED STATES of America**

v.

**Arch A. MOORE, Jr.**

**Crim. No. 75–189–CH.**

United States District Court,
S. D. West Virginia.

Dec. 13, 1976.

John A. Field, III, Charleston, W. Va., for plaintiff.

Stanely E. Preiser, Charleston, W. Va., for defendant.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

On May 5, 1976, Arch A. Moore, Jr., Governor of West Virginia, was acquitted of the charges brought against him in the above captioned case. He has moved this Court for the return of all the documents, papers and other objects which were taken from him or his office pursuant to subpoena or by other judicially approved discovery procedure. Requesting that both originals and copies made thereof be restored to him, Governor Moore further asks that the United States Attorney supply documentation of all papers and objects of Moore's in the Government's possession. The United States, by the United States Attorney for the Southern District of West Virginia, has opposed the return of the materials placed in evidence at the trial, stating that they constitute "evidence in a continuing investigation into other allegations of illegal activity." In an affidavit which will remain a sealed portion of this record, the United States Attorney has presented *ex parte* to this Court his explanation of the investigatory references in opposition to the motion. This Court finds that the Government's continued retention of Moore's records and possessions is an abuse of prosecutorial power and violative of what is a limited grant of power to force individuals, through legal procedures, to give up control of documents and other objects. It is out of keeping with the function and purpose of the subpoena power as provided by statute and it is at odds with existing case law. While possibly not rising to any level of constitutional infirmity, the United States Attorney's action, or inaction, comes within the Court's ambit in the supervisory role it plays in the administration of justice throughout the trial stage.

The Government argues that if a prosecutorial branch of government once brings a criminal action in which, through the Grand Jury and other subpoena and procedural processes, it obtains documents, etc., relevant to *that particular investigation,* it may retain them because they might be a source of further criminal evidence, they might be of interest to some Grand Jury at some point, they might be objects that the Government would use to support an argument to that Grand Jury to indict the individual, and they might be used at a possible future trial. The Government, wishing to save itself the inconvenience of waiting to see if any of those events transpire and then seeking subpoenas, prefers to

hold onto papers, business diaries, personal checks and other private materials of a citizen. This simply cannot be done. When an individual has been released from criminal jeopardy and the indictment against him expires, he is entitled to the return of his papers and other materials "as a matter of course." *United States v. Wallace & Tiernan Company,* 336 U.S. 793, 800, 69 S.Ct. 824, 93 L.Ed. 1042 (1948). That includes any photostats or other forms of copy made from them. *Id.* at 801, 69 S.Ct. 824. Mr. Moore does not make his request in the face of the Government's immediate need for these materials *in this case* for inspection or trial preparation. *See, United States v. Gilboy,* 160 F.Supp. 442, 463 (M.D. Pa.1958). Nor is this a situation in which Mr. Moore's papers, if returned, would be immediately subject to·subpoena in a civil suit already filed by the Government as was the case in *United States v. Maryland & Virginia Milk Producers Ass'n,* 151 F.Supp. 438 (D.D.C.), *mod'f'd and aff'd,* 102 U.S. App.D.C. 100, 250 F.2d 425 (1957). There, with no question of search and seizure or self-incrimination, ritualistic return and re-subpoenaing was considered a "futile thing."

> But if there were no civil proceeding, the documents would be ordered returned to the criminal defendant after dismissal of the indictment.

Orfield, The Federal Grand Jury, 22 F.R.D. 343 (1958).

█ The Government's attitude about the materials at issue in this case suggests that it regards the initial subpoenas as blanket permits to obtain and utilize selected objects for both on-going and future investigations. Nowhere in the Rules of Criminal Procedure or in the commentaries does one learn that the compulsory process for obtaining documentary evidence by subpoena pursuant to Rule 17 F.R.Cr.P. is anything but a specific tool for a *specific* Grand Jury or other investigatory proceeding or judicial hearing or trial. 8 Moore's Federal Practice ¶ 17.02. Access to an individual's papers and belongings is intentionally limited in our judicial system because we recognize, first, the individual's right to privacy and second, the possible self-incriminatory aspects of the privately-owned documentary evidence.[1] The federal courts can, indeed must, monitor subpoenas and when a subpoena sweeps too broadly or is oppressive, there is an opportunity to move to quash. *United States v. Gurule,* 437 F.2d 239 (10th Cir.), *cert. denied,* 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971); *In re Grand Jury Subpoena,* 342 F.Supp. 709 (D.Md.1972). The Government's proposed and current use of Governor Moore's private papers might well have been the basis for a motion to quash the subpoenas issued for the mail fraud charges, when only the mail fraud investigation was being pursued formally. The fact that the Government may have believed there could be other future areas of interest other than those forming the focus of the mail fraud investigation does not rise to the level of substantiation that would support enforcement for a subpoena. *See, In re Grand Jury Proceedings,* 507 F.2d 963 (3d Cir.), *cert. denied,* 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). The cases make clear that subpoenas cannot be used as a form of discovery tool, or for a "fishing" expedition. *United States v. Eli Lilly & Co.,* 24 F.R.D. 285, 294 (D.N.J.1959); *United States v. O'Connor,* 118 F.Supp. 248, 250–1 (D.Mass.1953). *Cf. United States v. Schembari,* 484 F.2d 931, 939 (4th Cir. 1973). If such uses are improper, the continued retention and examination of materials for purposes never covered in the original subpoena is equally improper.

It is not a "futile thing" to require the Government to restore possession of the things it takes nor that it be forced to formally and properly subpoena for new or different criminal investigations the same documents it previously had obtained. The procedures surrounding the subpoena pow-

---

1. The question of Governor Moore's Fifth Amendment rights, if any, in relation to the materials is not before this Court. *Cf. Andresen v. State of Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (Decided June 29, 1976); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (Decided April 21, 1976).

er, like those concerned with the use of search warrants, are of historical, philosophical and constitutional importance in this country because in our political system the state does not have immediate, unrestrained access to a person's belongings. The state must give justifications for its requests and submit itself to the possibility of challenge.

Accordingly, it is this 13th day of December, 1976, by the United States District Court for the Southern District of West Virginia, ORDERED:

That the motion of Arch A. Moore, Jr., for the return of all property seized from him by the United States Attorney for the Southern District of West Virginia be, and the same is, hereby GRANTED; and

The United States Attorney for the Southern District of West Virginia is hereby directed to return all papers and any copies made therefrom to Arch A. Moore, Jr., within forty-eight hours of the receipt of this Memorandum and Order.