James MURPHY

v.

Special Agent Charles ANDREWS et al.

Civ. A. No. 77–2699.

United States District Court,
E. D. Pennsylvania.

Jan. 30, 1979.

Lee Mandell and Alan L. Director, Philadelphia, Pa., for plaintiff.

Paul Sacks, Asst. City Sol., Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

This action is brought under the civil rights laws against various individual officers of the Philadelphia Police Department to redress alleged violations of the plaintiff's constitutional rights.[1] The defendants have moved for summary judgment on

---

1. The defendant City of Philadelphia was dismissed from this case by my order of August 17, 1978. The defendant Charles Andrews is now employed as a Special Agent with the United States Drug Enforcement Administration. At the time of the incidents involved in this case, however, Andrews was a Philadelphia police officer.

**512**

the ground that the issues raised in this suit have been previously litigated and decided unfavorably to plaintiff. For the reasons stated herein, defendants' motion must be denied.

### FACTS

At approximately 2:10 on the morning of August 8, 1975, plaintiff James Murphy was arrested by several of the defendants on the charge that he had murdered one Joseph Bosley. During the course of his ensuing detention and interrogation, plaintiff claims that the defendants viciously beat and abused him in an effort to obtain a confession. The beating is alleged to have continued throughout the morning, and plaintiff states that defendants refused his repeated pleas for the assistance of counsel. He did in fact make three separate statements to the police, at least two of which are alleged to have been exculpatory.[2] As a result of the beatings, plaintiff charges that he received "laceration of the mouth, painful bruises all over his body including great pain in the groin and back area, all of which caused him great pain, both physical and mental." Complaint, ¶ 32.

Prior to his criminal trial on the murder charge, plaintiff moved to suppress all oral and written statements given by him to the authorities on the ground that they were the result of illegal duress and coercion. After a lengthy hearing, the Honorable Bernard J. Goodheart of the Court of Common Pleas, Philadelphia County, denied the suppression motion, having found that plaintiff's statements were freely and voluntarily made. When the case proceeded to trial on the underlying charge, however, another person confessed to the murder, and plaintiff was acquitted.

### MOTION FOR SUMMARY JUDGMENT

In this action, plaintiff seeks to recover damages for the violations of his civil rights that occurred when defendants allegedly beat him and denied him his right to counsel, all in an effort to elicit incriminating statements. Defendants move for summary judgment on the ground that the issues raised by the instant complaint are substantially the same as those already adjudicated before Judge Goodheart at the suppression hearing. Defendants point out that Judge Goodheart found the statements to have been made voluntarily, a finding which implicitly must embody a conclusion that there was no beating.[3] Admittedly, plaintiff took no appeal from the finding. They argue, therefore, that the order denying Murphy's motion to suppress the statements became final, and relitigation of substantially the same questions is barred by the doctrines of res judicata and collateral estoppel.

At the outset it should be noted that a criminal prosecution necessarily involves a different cause of action and different parties than any subsequent civil suit, even though both proceedings may based on the same underlying incidents. Therefore, the doctrine of res judicata has no applicability in the subsequent civil action. On the other hand, the adjudication of issues in a criminal case can have collateral estoppel ramifications in a later civil suit. 1 B Moore's Federal Practice ¶ 0.418[1], at 2701 (2d ed. 1975). Thus, while the parties to the civil action are barred from relitigating those issues actually determined in the prior criminal prosecution, they are free to raise any issues that were not previously decided. The fact that such issues *could* have been adjudicated is of no consequence. *Neaderland v. Commis-*

---

**2.** The allegation that two of the statements given to the police by plaintiff Murphy were exculpatory is contradicted by the Findings of Fact rendered by the criminal trial judge after the suppression hearing. Judge Goodheart found that the first statement was exculpatory, the second was partially incriminating, and the third fully implicated Murphy in the Bosley murder. *Commonwealth v. Murphy,* Nos. 235 to 237 (Ct.Com.Pleas, Jan. 23, 1976), Findings of Fact Nos. 13, 15 and 19; see Defendants' Memorandum of Law in support of Defendants' Motion for Summary Judgment, Ex. "B". For the reasons expressed infra, the parties in the present suit are not bound by these findings.

**3.** See, e. g., *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

sioner of Internal Revenue, 424 F.2d 639, 641–42 (2d Cir.,), cert. denied, 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970); *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir.) cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970).

In the instant case, plaintiff argues that in denying the motion to suppress, Judge Goodheart did not find that Mr. Murphy had not been beaten. Rather, I am told, he found only that the statements had been given voluntarily. Therefore, although his brief does not expressly so state, plaintiff is really arguing that the question of physical beatings can be litigated in this action since it was not actually raised or decided before.

There is considerable merit in this position. The enumeration of reasons submitted to the Court of Common Pleas in support of Murphy's motion to suppress alleged that the statements in question were "extracted" from the plaintiff, were "given by him against his will," were the product of "the coercive tactics of the police," and were the result of "overbearing of the defendant's [Murphy's] will. . . ."[4] Defendants' Memorandum of Law in support of Defendants' Motion for Summary Judgment, Ex. A. The motion papers did not expressly raise the charge of physical beatings, and the Findings of Fact and Conclusions of Law issued by Judge Goodheart made no reference whatever to the beating allegations. It could well be argued, therefore, that the collateral estoppel doctrine does not bar us from determining whether the beatings took place since that question was not previously raised or decided. However, the parties have not supplied me with a transcript of the suppression hearing. The hearing was rather lengthy, extending over a two-day period, and without a transcript, it cannot be said with certainty that the evidence presented before Judge Goodheart did not include any reference to the beating allegations. See *Kauffman v.*

Moss, supra, 420 F.2d at 1274–75; *Basista v. Weir*, 340 F.2d 74, 81–82 (3d Cir. 1965).

■ Nevertheless, I need not inquire any further into the record of the criminal suppression hearing. Rather, I hold that even if the issue of physical beatings had been expressly raised and decided on the suppression motion, relitigation of the same issue here would not be precluded by the doctrine of collateral estoppel. In *United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 69 S.Ct. 824, 93 L.Ed. 1042 (1949), the Court dealt with a claim of res judicata in a civil anti-trust suit which followed a criminal anti-trust prosecution against the same defendants.[5] Pursuant to a subpoena, the defendants had produced certain documents for use in a grand jury investigation. An indictment was subsequently returned, charging defendants with violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. This indictment was dismissed, however, on the ground that women had been excluded from the grand jury panel. 336 U.S. at 797, 69 S.Ct. at 827; see *Ballard v. United States*, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946).

The res judicata issue arose in relation to three separate orders of the district court. At the same time that it dismissed the indictment, the district court ordered the government to return the documents which defendants had previously produced. Secondly, the government was ordered to return photostatic copies of the same documents. Thereafter, the prosecutors filed an information charging the same offense as that charged in the previous indictment. At this point, on the motion of the defendants, the district court held a hearing, after which it entered a third order " 'precluding and restraining the United States from using in any way or for any purpose any knowledge, information or evidence obtained from . . .' " the documents in question. 336 U.S. at 801, 69 S.Ct. at 828.

---

4. The attorney presently representing Mr. Murphy is not the same lawyer who represented him during the criminal proceedings.

5. Throughout the *Wallace and Tiernan* opinion, the Supreme Court makes no mention of the

distinction I noted earlier between the doctrines of res judicata and collateral estoppel. Nevertheless, the Court's discussion of finality in the context of the *Wallace & Tiernan* case seems equally applicable to both doctrines.

In the subsequent civil suit, after all criminal proceedings had been concluded, the government once again sought production of the same documents by means of a subpoena duces tecum. The district court quashed the subpoena, relying primarily on the Fourth Amendment.[6] On the government's appeal to the Supreme Court, however, the question of res judicata was also advanced, and the Court's discussion of this point is most instructive for our purposes.

Defendants in the case now before me rely heavily on the fact that plaintiff, Murphy, failed to take an appeal from Judge Goodheart's denial of the suppression motion. This, it is said, renders the order a final judgment entitled to full collateral estoppel ramifications. A similar argument was made and rejected by the Supreme Court in *Wallace & Tiernan*. There, it will be remembered, the district court had ordered the return of the defendants' documents at the same time that it ordered dismissal of the anti-trust indictment. The government took no appeal from that order. The defendants in the civil suit argued that by its failure to appeal, the government lost its right to challenge the return order, and it was thereby barred from any future use of the documents under the doctrine of res judicata. The Supreme Court pointed out,

however, that the government had every reason to believe dismissal of the indictment to have been proper.[7] In turn, the dismissal of the indictment created a situation where the defendants were unquestionably entitled to return of their documents. "Consequently, an appeal from the return order alone, even if such an appeal could have been taken, would have availed the Government nothing." 336 U.S. at 800, 69 S.Ct. at 828. Thus, the Court refused to apply the res judicata doctrine as a bar to use of the evidence.

In the present case, although Murphy did not prevail on his motion to suppress, he was acquitted of the underlying murder charge. He therefore had nothing whatever to gain by appealing Judge Goodheart's refusal to suppress evidence.[8] In these circumstances, it would be grossly unfair to hold that his failure to appeal bars him from raising any issues litigated at the suppression hearing. Plainly, any such holding would be run counter to the analysis in *Wallace & Tiernan*, supra.

Further support is found in the Supreme Court's discussion of res judicata as it related to the third order of the district court in *Wallace & Tiernan*. This "third order," as described earlier, prohibited the government "from using in any way or for any

**6.** The district court, during the criminal proceedings, found that the documents had been originally procured in a lawful manner, pursuant to a court subpoena, and the government was entitled to have them produced for presentation to a legal grand jury. When it was determined that the grand jury had been illegally constituted and the indictment had to be dismissed, however, the criminal trial court concluded that the subpoena, though otherwise lawful, was now an unreasonable search and seizure in violation of the Fourth Amendment. 336 U.S. at 797, 69 S.Ct. at 827. This holding led the defendants to argue in the subsequent civil suit that the government was permanently barred from any use of the documents under the doctrine of *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1919). Noting that the *Silverthorne* rule precluded the government from using at any time evidence or knowledge "gained by the Government's own wrong," the District Court agreed with the *Wallace & Tiernan* defendants and it barred the government from using the disputed documents.

The Supreme Court reversed this ruling. In *Silverthorne*, the defendants were physically detained while government agents went to defendants' offices and seized all the books, papers and documents that could be found. This was done "without a shadow of authority" and the Supreme Court labeled it "an 'outrage', planned or at least ratified by the Government." 336 U.S. at 796, 69 S.Ct. at 826. These circumstances differed totally from those in *Wallace & Tiernan* where the government's conduct posed no threat to Fourth Amendment interests. Thus, the district court's application of the *Silverthorne* exclusionary rule to the situation in *Wallace & Tiernan* was deemed wholly inappropriate. 336 U.S. at 798–800, 69 S.Ct. at 827–28.

**7.** The holding in *Ballard v. United States*, supra, made it clear that the indictment had to be dismissed. 336 U.S. at 800, 69 S.Ct. at 828.

**8.** It seems doubtful that plaintiff even had a legal right to take such an appeal.

purpose any knowledge, information or evidence obtained from or contained in any of the aforesaid illegally seized papers or documents." 336 U.S. at 801, 69 S.Ct. at 828. The defendants insisted that this surely was res judicata, sounding a death-knell to the government's attempted use of the material. Here, they relied on both the broad scope evidenced by the order's language, and the fact that no appeal had been taken, thus rendering the order "final." The government denied that the order was intended to have the broad scope suggested by defendants and urged it was interlocutory, and as such, nonappealable.

To resolve the matter, the Supreme Court looked to the proceeding from which the order resulted. Both the scope of the order and its appealability "depend upon whether the proceeding was handled by the court as an independent plenary proceeding or one to suppress evidence at a forthcoming trial."· 336 U.S. at 802, 69 S.Ct. at 829. The Court explained that if we were dealing with a plenary proceeding for the return of property and its suppression as evidence, any resulting order would be final and appealable, and the relief granted could well have res judicata consequences. On the other hand, "a decision on a motion to return or suppress evidence in a pending trial may be no more than a procedural step in a particular case and in such event the effect of the decision would not extend beyond that case." 336 U.S. at 802, 69 S.Ct. at 829.

To determine whether the proceeding in question was "independent and plenary" or merely a "procedural step," the *Wallace & Tiernan* opinion stated that we must examine the particular circumstances of the case involved. Here, the Court cited its earlier opinion, written by Justice Brandeis, in *Cogen v. United States,* 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1929).

The defendant in *Cogen* had been indicted for violating the National Prohibition Act. Before trial, he filed a motion with the criminal trial court for the return of certain papers taken from him without a warrant and for the suppression of any evidence derived therefrom. The motion

was refused, and the defendant sought an immediate appeal, contending that the denial was a final order.

The Supreme Court explained that if the order appealed from was the result of an independent, plenary proceeding, it would be deemed both final and appealable. On the other hand, if the proceeding was merely a procedural step in the pending criminal case, the order would be non-final, and no immediate appeal would lie. By way of example, the Court suggested that the proceeding would be independent and plenary if it was a motion for return of documents filed by a stranger to the litigation, or if the motion had been made before the movant had been indicted. Similarly, a proceeding held in a court other than the one in which the criminal case is pending, or a proceeding conducted after the criminal matter has been concluded would be independent and plenary. 278 U.S. at 225–26, 49 S.Ct. at 120. On the other hand, where the motion is made by a party to a criminal case currently pending before the same court in which the motion is filed, and the relief sought is clearly the suppression of evidence at the forthcoming trial, the proceeding is merely a procedural step in the criminal case. 278 U.S. at 227, 49 S.Ct. at 120.

These authorities leave no doubt as to the proper resolution of the matter before me. This was a garden-variety suppression motion, filed in a pending criminal case and seeking relief from the criminal trial court. It had none of the markings of the "independent and plenary" proceedings described above. Indeed, no one could seriously argue that the two-day hearing conducted by Judge Goodheart was anything other than a procedural step in the pending murder trial. As such, the suppression ruling has no effect beyond the criminal case, and it cannot preclude the adjudication of any issues in the present civil rights suit. Defendants' motion for summary judgment must therefore be denied.

In summary, plaintiff Murphy's failure to appeal from the denial of his suppression motion cannot preclude him from relitigat-

ing issues decided therein since such an appeal would have availed him nothing. Moreover, the suppression order resulted from a mere procedural step in the pending murder prosecution, and it therefore has no effect beyond the criminal case. For both these reasons, the defendants' motion for summary judgment must be denied.